UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO. 13-131

STACEY JACKSON                              SECTION "S" (2)

## ORDER AND REASONS ON MOTION

Defendant Stacey Jackson has been charged in a four-count indictment alleging conspiracy, solicitation of bribes, theft of federal funds and obstruction of justice arising from her former employment as executive director of NOAH, the New Orleans Affordable Homeownership agency.  Defendant's motion to compel discovery, Record Doc. No. 17, is pending before me.  The government filed a timely opposition memorandum.  Record Doc. No. 27.  After oral argument requested by defense counsel was conducted on November 6, 2013, Record Doc. No. 28, I deferred ruling pending in camera review of the materials in the possession of Judge Kurt Engelhardt of this court.

Specifically, defendant seeks an order requiring production to her of two kinds of materials, which her motion lists as Sub-parts A through D, Record Doc. No. 17 at pp. 1-2: (1) in Sub-part (A), she seeks any "materials and findings" from the Justice Department's Office of Professional Responsibility ("OPR") "related to the investigation of Salvadore Perricone, Jan Mann and any other AUSAs [Assistant United States Attorneys] . . . for blogging and/or grand jury leaks" (hereinafter "the OPR investigation"), id. at p. 1, ¶ (A);

(2) in Sub-parts B, C and D, she seeks all materials and reports accumulated in response to Judge Engelhardt's order in <u>United States v. Bowen</u>, Crim. No. 10-204-N ("the Horn materials"), which ultimately resulted in a finding that "outrageous prosecutorial misconduct" had been perpetrated by members of the Justice Department, including the local United States Attorney's Office, in the online anonymous postings of public comments concerning that case. <u>See</u> Record Doc. No. 1137 in <u>Bowen</u>, Crim. No. 10-204-N. Because neither I nor the line prosecutor assigned to Stacey Jackson's case had ever seen any of the requested materials, and therefore could neither determine nor even represent whether they contain anything "material to preparing the defense" in the captioned case, Fed. R. Crim. P. 16(a)(1)(E)(i), I deferred my decision, pending in camera review of the materials already in Judge Engelhardt's possession. I have now completed my in camera review.

Ironically, in a criminal case – where a person's very liberty is at stake – pretrial discovery is more restrictive than in a civil case – where the recovery of money is usually the only issue. Unlike civil discovery, where mere relevance to claims or defenses is the discovery standard, Fed. R. Civ. P. 26(b)(1), a defendant in a criminal case may receive the kind of discovery requested by this motion only if the requested "item is <u>material</u> to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i) (emphasis added). A criminal defendant bears the burden of showing "some indication that pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of

- 2 -

proof in his favor."  United States v. Ross, 511 F.2d 757, 763 (5th Cir. 1975); accord
United States v. Dobbins, 482 F. App'x 35, 41 (6th Cir. 2012); United States v. Caro, 597
F.3d 608, 621 (4th Cir. 2010); United States v. Jordan, 316 F.3d 1215, 1251 (11th Cir.
2003). However, a mere "abstract logical relationship to the issues in the case" is
insufficient to require production. Ross, 511 F.2d at 762. Evidence is considered material
only "as long as there is a strong indication that it will play an important role in uncovering
admissible evidence, aiding witness preparation, corroborating testimony, or assisting
impeachment or rebuttal." Caro, 597 F.3d at 621 (quoting United States v. Lloyd, 992 F.2d
348, 351 (D.C. Cir. 1993)); accord United States v. Clingman, 521 F. App'x 386, 392 (6th
Cir. 2013); United States v. Gladdis, 877 F.2d 605, 611 (7th Cir. 1989).

In this case, Stacey Jackson describes the matters as to which she alleges the
requested items are material in a broad-ranging and sometimes redundant list of eight
"defenses." Record Doc. No. 17 at pp. 7-8; Record Doc. No. 17-1 at pp. 6-7. In my view,
these eight assertions can be more concisely categorized in terms of four (4) possible legal
defenses, three of which might support a motion to dismiss the indictment:

> (1) violation of the grand jury secrecy requirements of Fed. R. Crim. P. 6(e),
> for which contempt sanctions are the usual remedy; In re Grand Jury
> Investigation (Lance), 610 F.2d 202, 212 (5th Cir. 1980); Fed. R. Crim. P.
> 6(e)(7);
>
> (2) prosecutorial misconduct undermining due process fairness principles in
> the accusatory process through violation of federal regulations and ethical
> rules applicable to prosecutors; see United States v. Winters, No. 12-60378,
> 2013 WL 3089514, at *5 (5th Cir. June 20, 2013) (to establish the defense of

prosecutorial misconduct, the defendant must show that (1) the prosecutor engaged in improper conduct and (2) the prosecutor's improper conduct affected the defendant's substantial rights); United States v. McKenzie, 678 F.2d 629, 631 (5th Cir. 1979) (even upon a showing of the "most egregious prosecutorial misconduct," the indictment may only be dismissed upon proof of actual prejudice, "when prosecutorial misconduct amounts to overbearing the will of the grand jury so that the indictment is, in effect, that of the prosecutor rather than the grand jury.") (emphasis added); accord United States v. Two Eagle, 318 F.3d 785, 793 (8th Cir. 2003);

(3) selective prosecution based upon defendant's race; see United States v. Armstrong, 517 U.S. 456, 464 (1996) (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962)) (prosecutorial decisions "may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification'"); accord United States v. Wright, 261 F. App'x 736, 736-37 (5th Cir. 2008); defendant's prima facie case of selective prosecution, must show (1) that she as "singled out for prosecution while others similarly situated who committed the same crime were not prosecuted," and (2) "that the government's discriminatory selection of [defendant] for prosecution was invidious or done in bad faith – i.e., that the government selected its course of prosecution 'because of' rather than 'in spite of' its adverse effect upon an identifiable group." United States v. Sparks, 2 F.3d 574, 580 (5th Cir. 1993) (quoting Wayte v. United States, 470 U.S. 598, 610 (1985)); and

(4) a broader argument of violation of defendant's due process rights by combination of all of the above.

In support of her motion, defendant attaches evidence in the form of an August 8, 2008, article from nola.com concerning the NOAH grand jury investigation and various anonymous comments about the article posted under pseudonyms. Among the most egregious of those comments are the following three, all posted in close proximity to each other; one by "campstblue," who has since been identified as former Assistant United

States Attorney and Senior Litigation Counsel Sal Perricone, and two others under the

names "aircheck" and "jammer1954":

aircheck                    August 08, 2008 at 10:26PM

The "fun" has just begun. . .   Wait until the next round of subpoenas go out, then arrests will follow a little while after that etc. . .

Can't wait to hear about Stacey "ring leader" Jackson when's (sic) it's her turn to face the music. . . expect to see her rat out a few to minimize prison time she's likely to get.

Will be most interesting to see what SCUM rises to the top.
(Ellipses in original.)

* * *

campstblue                  August 09, 2008 at 5:48PM

well, man - you know, man.  I didn't know anything about dis stuff, man, you hear what I'm saying, man. You know, man, like you always looking for something negative to write about, man.  How's dis going to help the racovery (sic), man, you hear what I'm saying, man. We just trying to make it back, man.  Didn't you hear what I said man, dis is a choclate (sic) city, man and we do things the choclate (sic) way, man – you hear what I'm saying, man?

TRANSLATION:  It's our turn to steal.  We got the power.  You can't do anything to us.

God Bless the US Attorneys office!!!!!!!!!

* * *

jammer1954                  August 09, 2008 at 9:48PM

Mark my words. The canaries are going to start singing, and Car 54 is going up in smoke.

Stacey Jackson is going to rat out every one, every body, and every thing to make the best deal for herself-after all she did this as chief of NOAH so her behavior isn't going to change.

RayRay is going down, as is Cedric and who knows who else.

What is worse is that RayRay was going to clean up City Hall.

He is "stuck on stupid."

Record Doc. No. 17-2 at pp. 11, 15-16.

Defendant speculates throughout her motion papers that the requested materials will contain evidence of "a pattern of . . . governmental misconduct, system and intent," . . . "how long [prosecutors or federal law enforcement agents] had been doing this," and "will obviously show the source of the [grand jury] leak."  Record Doc. No. 17-1 at pp. 7, 17-18.

Having reviewed the materials in Judge Engelhardt's possession in camera and applying the stringent, applicable legal standards outlined above, I find that nothing in defendant's speculation about what the Horn materials should or might contain is borne out in the files I have reviewed.  For the following reasons, the motion is DENIED as to the Horn materials and DISMISSED WITHOUT PREJUDICE IN PART AS PREMATURE as to the remainder of what is sought in this motion, subject to the order contained herein.

As an initial matter, I note that a discovery request under Rule 16 cannot be used to pursue a selective prosecution defense.  The United States Supreme Court has clearly ruled that because "a selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution," discovery is not available under Rule 16 of the Federal Rules of Criminal Procedure, which merely "authorizes defendants to examine Government documents material to the preparation of their defense against the

Government's case in chief, but not to the preparation of selective-prosecution claims." Armstrong, 517 U.S. at 463. "The justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim." Id. at 468. Thus, no discovery of these materials is permissible to whatever extent they are sought in support of a claim of selective prosecution based on race.

As to the remaining legal defenses, there is nothing in the Horn materials that supports or can be characterized as material to Stacey Jackson's defense. The Horn materials contain nothing but denials by all who were interviewed concerning any grand jury leaks. They make no findings, conclusions or even intimations that any grand jury leak ever occurred. Apart from the misconduct of those already identified in the Bowen opinion, which related primarily to the Danziger Bridge incident and police matters addressed in that case, the Horn materials make no findings, conclusions or even intimations that any institutional pattern, practice, policy or concerted engagement in prosecutorial misconduct that might extend (and therefore be material) to Stacey Jackson's defenses existed, occurred or was systematic or approved by top management in the local United States Attorney's Office. Neither Stacey Jackson nor NOAH are mentioned or even vaguely alluded to in the Horn materials.

On one hand, it is not surprising that the Horn materials contain nothing material to the defense of Stacey Jackson. They were focused narrowly on Perricone, Mann and

- 7 -

Justice Department personnel engaged in the Danziger Bridge matter.  They brush on the question of whether any broader practice, pattern or concerted plan of misconduct possibly extending to Stacey Jackson existed in the local United States Attorney's Office, but deny or find no proof of it.

Even when the Bowen-initiated investigation made a truncated effort to extend itself to the possible identity of eleven (11) other suspect commenters, United States v. Bowen, Crim. No. 10-204 "N," Record Doc. No. 1137 at p. 18 n. 20, only one of whom, "thewizard," was ever identified as a government agent, it did not inquire into the identities of the two who took direct aim at Stacey Jackson, i.e., "jammer1954" and "aircheck."[1] "Thewizard's" posted comments are contained in the Horn materials, and none of them make any reference or have anything to do with Stacey Jackson or NOAH.  Thus, the Horn materials contain nothing addressing whether "jammer1954" or "aircheck" was a federal law enforcement agent or prosecutor. If that person or those persons who posed as "aircheck" or "jammer1954" were management-level Justice Department prosecutors or law enforcement officers responsible for office-wide policy making, or other Justice Department personnel involved directly in this case, the investigation and/or grand jury proceedings concerning Jackson or NOAH, especially if they were persons engaged in making public posts of the type quoted above, his or her identity might lead to the

---

[1]My review of the comments of "aircheck" available by searching that name combined with nola.com indicates that "aircheck" posted more than 500 comments, 11 of which referred to Stacey Jackson and/or NOAH specifically.

conclusion that there was a pattern, policy or practice of pre-indictment prosecutorial misconduct in the accusatory process material to Jackson's defenses alleging violations of her due process rights.   However, no such items or even references to those two pseudonyms exist in the materials that I have reviewed that are requested in Sub-parts B, C, and D of this motion.

As to any OPR investigation materials, findings or reports requested in Sub-part A of defendant's motion, the Horn materials state in a March 29, 2013 supplement that, as part of its own investigation independent of Horn's, "OPR . . . is investigating the postings by Perricone and Mann, as well as the extent to which [E.D. La.] USAO management was aware of these postings. We understand that OPR has concluded the majority of its investigative work and is drafting a report.  In limited circumstances in the past, the Department [of Justice] has provided OPR's findings, without disclosing privileged or other sensitive information, to federal district courts with the understanding that the findings will not be disclosed publicly . . . the Department does not share OPR's findings with the court until the Department's disciplinary process has been completed . . . .  In this matter and consistent with its practice, OPR is prepared to share its findings with the Court once the Department's disciplinary process is complete.  This process may be lengthy . . . it is difficult to predict how long the process may take."

Accordingly, the portion of defendant's motion seeking OPR materials described in Sub-part A is dismissed without prejudice as premature, subject to the following:  **IT IS**

**ORDERED** that counsel of record for the United States in this case must advise appropriate Justice Department personnel that it is this court's order that immediately upon completion of the subject OPR investigative report and related disciplinary proceedings, the Justice Department must inform me in writing, with a copy to defense counsel, that its activities in this regard have been completed, so that defendant may determine what further action, if any, may be appropriate.

This motion and others like it filed recently in this court raise the eternally significant question:  Does the end justify the means?  All agree that prosecutorial action against public corruption is an admirable and necessary end.  However, when the Founders enshrined the concept of due process in the Constitution; when justices of the United States Supreme Court sometimes define it to include "fundamental fairness," Duncan v. Louisiana, 391 U.S. 145, 177 (1968) (Harlan, J. dissenting); and when the Justice Department itself, various federal regulations and the applicable professional conduct rules prohibit the kind of prosecutorial conduct detailed in Bowen;[2] they answered that question with a definitive "no" in the context of constitutional criminal procedure.  If the federal accusatory process is to comply with the Constitution, law enforcement agents and Justice Department prosecutors must refrain from the kind of conduct reflected in the racism,

---

[2]United States v. Bowen, Crim. No. 10-204, Record Doc. No. 1137 at pp. 33-43.

attempted intimidation and pre-judgment reflected in the comments of "campstblue," "aircheck" and "jammer1954" that are attached as evidence in support of this motion.

The defenses founded in due process concerns asserted by Stacey Jackson in this case are serious. However, because the relief sought in this motion is an order compelling discovery of the Horn materials, which contain nothing material to Stacey Jackson's defenses, the motion <u>must</u> be DENIED insofar as it seeks those materials described in Sub-parts B, C and D of her motion. The motion is premature insofar as it seeks the OPR materials described in Sub-part A, which apparently have not yet been finalized, and no definitive determination of their possible materiality to Jackson's defenses can be made at this time. That part of defendant's motion is therefore DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this ____6th____ day of December, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

- 11 -