UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                       NO. 13-131

STACEY JACKSON                               SECTION "S" (2)

## ORDER AND REASONS ON MOTION

After a lengthy pre-indictment investigation and grand jury proceedings with accompanying publicity, defendant Stacey Jackson was charged with conspiracy, solicitation of bribes, theft of federal funds and obstruction of justice arising from her former employment as executive director of NOAH, the New Orleans Affordable Homeownership agency.  Upon this court's authorization, Record Doc. No. 40, Jackson issued a subpoena to The Times Picayune, L.L.C. d/b/a NOLA Media Group ("The Times-Picayune").  The designated place and date for production was the office of defense counsel on February 3, 2014.  Record Doc. No. 41.

The subpoena seeks information in support of a prosecutorial misconduct defense. It requires production of certain specifically identified data that would provide the actual identities of user names "aircheck" and "jammer1954," two aliases of persons using The Times-Picayune's Nola.com news reporting site to make anonymous disparaging comments about Jackson, including proclamations of her presumed guilt, alleged criminality and predicted conviction.  Defendant suspects that the anonymous commenters

are in fact federal prosecutors and/or law enforcement agents or other officials who participated in or had supervisory authority over her investigation and resulting criminal case.   She has previously submitted some evidence in support of her prosecutorial misconduct defense.  Record Doc. No. 17-2.  Her suspicions are buttressed by the recent experience in this court of at least seven defendants and two investigation targets in three different proceedings whose convictions were overturned, whose indictment was dismissed or whose investigation was dropped after misconduct similar – although certainly more extensive – than what Jackson alleges in her case was shown to have occurred.[1]

In response to the subpoena, The Times-Picayune filed a motion to quash, Record Doc. No. 42, that is pending before me.  Defendant filed a timely opposition memorandum. Record Doc. No. 45.  The government has neither supported nor opposed the motion.  Trial is set to commence on May 12, 2014, and the deadline by which defendant must file any substantive motions, including any motion to dismiss the indictment on prosecutorial misconduct grounds, is March 17, 2014.  Record Doc. No. 31.

---

[1]See United States v. Bowen et al., Crim. No. 10-204"N"(1), Record Doc. No. 1137; United States v. Fazzio, Crim. No. 11-157"C"(5), Record Doc. Nos. 293-94; Manuel Torres, Charges Against River Birch Targets Dominick Fazzio and Mark Titus Dismissed, Judge Orders, The Times-Picayune, http://www.nola.com/crime/index.ssf/2013/03/charges_against_river_birch_pr.html (Mar. 12, 2013, 12:20 PM, updated Mar. 12, 2013, 12:24 PM); Heebe et al. v. United States, Civil Action No. 10-3452"C"(5).

Having considered the written submissions of the parties, the record as a whole and the applicable law, the motion is GRANTED IN PART AND DENIED IN PART, subject to the specific order contained herein, as follows.

As an initial matter, I agree with The Times-Picayune, and the opposition does not strenuously contest, that it has standing to assert the First Amendment claim upon which parts of its motion are based. Drasin v. John Does 1 - 10, No. ELH-13-1140, 2013 WL 3866777, at *2 n.3 (D. Md. July 24, 2013) (citing Schaumberg v. Citizens for a Better Env't, 444 U.S. 620, 634 (1980); Enterline v. Pocono Med. Ctr., 751 F. Supp. 2d 782, 786 (M.D. Pa. 2008)).

The real thrust of The Times-Picayune's motion is to present the delicate and often-addressed questions of (1) the appropriate pretrial use of the subpoena power in criminal cases, and (2) the balance that must be maintained when the fundamental constitutional rights of opposing interests conflict. In this instance, the conflicting rights are Jackson's Fifth Amendment Due Process rights to appropriate procedures and fundamental fairness in the criminal accusatory process and the First Amendment rights of citizens to comment anonymously in a press-hosted forum on matters of public interest.

The threshold inquiry is the propriety of defendant's subpoena. In United States v. Nixon, 418 U.S. 683 (1974), the United States Supreme Court authoritatively adopted the approach previously taken by lower federal courts in establishing "certain fundamental characteristics of the subpoena duces tecum in criminal cases" and a "required showing"

and "test" by which its proper use must be evaluated.  Id. at 698-99.  The Supreme Court stated that the subpoena Rule applicable in criminal cases, Fed. R. Crim. P. 17, "was not intended to provide a means of discovery . . . .  [I]n order to require production prior to trial, the moving party must show:  (1) that the documents are evidentiary and relevent [sic]; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'"  Id. at 699.  Thus, "to carry his burden, [the party issuing the subpoena] must clear three hurdles:  (1) relevancy; (2) admissibility; (3) specificity."  Id. at 700.

Concerning the First Amendment interest asserted by The Times-Picayune on behalf of the commenters who use its Nola.com site, "[a]s a general proposition, anonymous speech is protected by the First Amendment."  Justice for All v. Faulkner, 410 F.3d 760, 764 (5th Cir. 2005) (citing McIntyre v. Oh. Elections Comm'n, 514 U.S. 334, 342 (1992)) (additional citations omitted).  The constitutional protection extends beyond "the field of literary endeavor," to include a wide range of speech and publication.  McIntyre, 514 U.S. at 342-43.  However, it is clear, as succinctly concluded  by Magistrate Judge Kirk of the Western District of Louisiana at the end of his exhaustive analysis of McIntyre and other

decisions, that only "a <u>limited</u> right of anonymity exists." <u>In re Baxter,</u> No. 01-00026-M, 2001 WL 34806203, at *10 (W.D. La. Dec. 20, 2001) (emphasis added).

Limitations on the right to anonymous speech apply even more stringently to federal prosecutors and other government agents and officials engaged in criminal investigation and prosecution.  As Judge Engelhardt of this court has noted, citizens who become lawyers, prosecutors or other federal agents knowingly subject themselves to further restrictions on their already limited right to speak anonymously, especially as to ongoing investigations and cases pending within the scope of their official responsibilities.  A plethora of court decisions, professional conduct rules, federal regulations, Local Rules of court and provisions in the Department of Justice's own United States Attorneys Manual place restrictions on their speech. <u>United States v. Bowen,</u> No. 10-204, 2013 WL 5233325, at *17-22 (E.D. La. Sept. 17, 2013) (citing La. Rules of Prof. Conduct 3.8; <u>United States v. Lopez-Avila</u>, 678 F.3d 955, 964-65 (9th Cir. 2012); 28 C.F.R. § 50.2; United States Attorneys Manual, Ch. 1-7.000; U.S.D.C., E.D., La. Local Crim. Rules 53.1 - 53.6).

Thus, courts have emphasized, primarily in the context of civil litigation, that "'[t]he right to anonymous speech . . . is <u>not</u> unlimited,' and the identity of an anonymous speaker <u>may</u> be disclosed . . . to protect a litigant's legitimate interest in vindicating his or her legal rights in court." <u>Drasin</u>, 2013 WL 3866777, at *2 (quoting <u>Lefkoe v. Jos. A. Bank Clothiers, Inc.</u>, 577 F. 3d 240, 249 (4th Cir.  2009)) (emphasis added); <u>accord</u> <u>In re Anonymous Online Speakers</u>, 661 F.3d 1168, 1173 (9th Cir. 2011).  In civil cases, where

-5-

the stake is usually the recovery of money damages to vindicate tort or contract law interests, courts frequently order disclosure of the identity of anonymous speakers. See id. at 1177-78 (refusing to grant writ of mandamus to overturn district court's order that defendant must reveal identities of anonymous online speakers on its website); Drasin, 2013 WL 3866777, at *5 (blog administrator's motion to quash subpoena seeking identity of anonymous online commenters denied and order requiring production); Doe I v. Individuals, 561 F. Supp. 2d 249, 257 (D. Conn. 2008) (denying anonymous online poster's motion to quash subpoena seeking his identity).   The courts do so by weighing and balancing the limited First Amendment right of the anonymous speaker against the opposing litigant's interest and ruling in favor of the party whose interest outweighs the other.   See In re Anonymous Online Speakers, 661 F.3d at 1177 ("The district court here appropriately considered the important value of anonymous speech balanced against a party's need for relevant discovery in a civil action.  It also recognized the 'great potential for irresponsible, malicious, and harmful communication' and that particularly in the age of the Internet, the 'speed and power of internet technology makes it difficult for the truth to "catch up" to the lie.'"); Drasin, 2013 WL 3866777, at *3 (Where request "impinges on First Amendment rights, courts will 'balance the burdens imposed . . . against the significance of the . . . interest in disclosure' to determine whether the 'interest in disclosure . . . outweighs the harm.'") (quoting Perry v. Schwarzenegger, 591 F.3d 1141, 1161 (9th Cir. 2010)); Doe I, 561 F. Supp. 2d at 254 (quotation omitted) ("Doe 21 has a

-6-

First Amendment right to anonymous Internet speech, but . . . the right is not absolute and must be weighed against Doe II's need for discovery to redress alleged wrongs. . . .  This balancing analysis ensures that the First Amendment rights of anonymous Internet speakers are not lost unnecessarily, and that plaintiffs do not use discovery to harass, intimidate or silence critics in the public forum opportunities presented by the Internet."); cf. Sinclair v. Tubesocktedd, 596 F. Supp. 2d 128, 131-32 (D.D.C. 2009) ("balancing of interests" approach employed when First Amendment anonymous speech right was asserted in response to subpoena, and subpoena quashed because underlying action which subpoena sought to advance was found to be "fundamentally flawed").

The interest that Stacey Jackson seeks to vindicate, her Due Process rights in the accusatory process of this serious criminal case, where her liberty interest in freedom itself is ultimately at stake, is a particularly more compelling interest than those asserted by the civil litigants in the cases cited above.

Applying the foregoing standards, I find that defendant's subpoena was properly issued because she has made the required threshold showing in this particular instance.

Because I have the advantage over counsel for The Times-Picayune of having read the record of the Justice Department's preliminary investigation ("the Horn Reports") of the misconduct of the former First Assistant and the former Senior Litigation Counsel in the local United States Attorney's Office, I cannot accept The Times-Picayune's argument that the subpoena is based on mere "speculation."  Record Doc. No. 42-1 at p. 14.  Of

-7-

course, neither I nor the defendant can be <u>certain</u> that the subpoena will yield information material to her prosecutorial misconduct defense.  However, certainty is <u>not</u> the standard. The <u>Nixon</u> Court framed the standard in terms of only "a sufficient likelihood" that the subpoenaed materials are relevant.  <u>Nixon</u>, 418 U.S. at 700.  The evidence previously submitted by Jackson – though certainly not alone sufficient to support dismissal of the indictment – when coupled with the evidence, tone and tenor of the Horn Reports, is sufficient in my view to establish that Jackson has at least a colorable claim of prosecutorial misconduct, that the identity of these two commenters is relevant to it, and that she cannot adequately prepare that defense without access to those identities.

The Horn Reports contain significant indications, principally from the statements and testimony of the former First Assistant and the former Senior Litigation Counsel in the local United States Attorney's Office, establishing a sufficient likelihood that others in the United States Attorney's Office and in federal law enforcement agencies responsible for conducting criminal investigations engaged in similar conduct in other cases that led to the overturning of convictions, dismissal of an indictment and dropping of a longstanding criminal investigation noted above.  The Horn Reports establish that Justice Department investigators had sufficient factual basis to send a subpoena to The Times-Picayune seeking the identities of 11 other Nola.com commenters, whom they suspected to be federal prosecutors and/or investigating agents; yet, the investigators simply  "deferred" their request for this information in response to The Times-Picayune's resistance and made no

subsequent attempt to enforce the subpoenas, despite the fact that one of the suspected commenters, an FBI agent calling himself "thewizard," later admitted his actual identity to investigators.  Despite all the technical expertise that the Justice Department brings to bear against the targets of its investigations, the Horn Reports concluded that its investigators could not forensically recover computer data evidence from the local United States Attorney's Office internet portals for the relevant years 2010-11, because the local office did not retain data for that period.  Thus, the Nixon Court's requirement that the subpoenaed materials cannot otherwise be reasonably procured in time to prepare defendant's prosecutorial misconduct defense in this case appears satisfied.

The content of the Horn Reports indicates to me that the inquiries its investigators made of Justice Department personnel other than the former First Assistant and former Senior Litigation Counsel in the local United States Attorney's Office were less than searching and exhaustive.  As Judge Engelhardt has previously found, "[I]nformation obtained during the  course of Mr. Horn's investigation . . . substantially increases the Court's concerns that Nola.com posting activity about [the Bowen] case, and others, by government attorneys and personnel, was far more extensive than previously suggested, and even presently known."  Bowen, 2013 WL 5233325, at *45 (emphasis added).

The Horn Reports reflect that both the former First Assistant and the former Senior Litigation Counsel in the local United States Attorney's Office admitted that they commented online under other aliases, which they could not recall.  The evidence indicates

-9-

that they sometimes commented in close proximity to each other, as if in chat mode.  The former Senior Litigation Counsel occasionally used different aliases for himself to comment on the same topics, as if in chat mode with himself.  Some of the Nola.com comments made by aircheck and jammer1954 were made in close proximity to those made by an alias of the former Senior Litigation Counsel.  Their comments were made in the same kind of cop jargon lingo sometimes employed by the fake names of the former Senior Litigation Counsel.  Aircheck in particular showed the kind of  persistent commenting, totaling about 500 comments, including at least 11 specifically targeting Stacey Jackson and NOAH, that was the trait of other commenting that has conclusively been attributed to the former First Assistant and the former Senior Litigation Counsel in the local United States Attorney's Office.

Some courts have identified the characteristics of subpoenas that constitute impermissible "fishing expedition" discovery devices in criminal cases to include absence of information as to the contents or nature of the materials sought, failure to show a likelihood of the existence of the materials, overly broad-ranging requests and lack of specificity, particularity and detailed description of the materials sought.  E.g., United States v. Carriles, 263 F.R.D. 400, 404-05 (W.D. Tex. 2009) (citing Nixon, 418 U.S. at 700-02; Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951); United States v. Arditti, 955 F.2d 331, 346 (5th Cir. 1992); Black v. Sheraton Corp., 564 F.2d 531, 545 (D.C. Cir. 1977); United States v. Skilling, Crim. No. H-04-025, 2006 WL 1006622, at *2

(S.D. Tex. Apr. 13, 2006); United States v. Ruedlinger, 172 F.R.D. 453, 456 (D. Kan. 1997)).  The subpoena issued by Jackson suffers from no such shortcomings.  It did not request – nor would I permit – a request for the identity of every person who ever commented about Stacey Jackson and/or NOAH on Nola.com.  Instead, it is restricted to a relevant time period and particularized kinds of information and materials concerning only two anonymous commenters, whose identities are demonstrably relevant for the reasons discussed above.

For all of the foregoing reasons, I find that defendant's subpoena was properly issued under the Nixon standards.  Thus, the court must proceed to the question of how best to balance the competing interests of the commenters' limited First Amendment rights against the defendant's Due Process rights.  I conclude that the optimum procedures to insure that the appropriate balance is achieved in this instance are the tools provided in Rule 17 itself and approved by the Supreme Court in Nixon.

Fed. R. Crim P. 17(c)(2) provides that, upon motion of the sort made by defendant in this case, "the court may quash or modify the subpoena if compliance would be unreasonable." (Emphasis added).  Fed. R. Crim. P. 17(c)(1) provides that "t]he court may direct the [subpoena recipient] to produce the designated items in court before trial. . . . [and] may permit the parties and their attorneys to inspect all or part of them." (Emphasis added).  In addition, the Supreme Court in Nixon and other courts applying the Nixon standards have found that, while not required or generally used, in camera inspection of

-11-

subpoenaed materials may properly be employed to aid the court in assuring that Rule 17 subpoenas are restricted to their appropriate use and that the proper balance between potentially conflicting constitutional interests may be reached. Nixon, 418 U.S. at 714-16; United States v. Libby, 432 F. Supp. 2d 26, 32 (D.D.C. 2006). Accordingly,

IT IS ORDERED that the motion is DENIED IN PART insofar as it requests that the subpoena be quashed in its entirety such that no production of any kind might be required.

IT IS FURTHER ORDERED, however, that the motion is GRANTED IN PART, but only in that the subpoena is modified as follows: As issued, the subpoena required production of the requested information by The Times-Picayune directly to defense counsel at his office on February 3, 2014. Record Doc. No. 41. The "Place for Production" and "Date for Production" provisions of the subpoena are hereby modified to require instead that The Times-Picayune must produce, no later than February 19, 2014 at 5:00 p.m., all information responsive to the subpoena directly to me in my chambers, 500 Poydras Street, Room B-409, New Orleans, Louisiana, for my in camera review.

If I determine based upon my in camera review that aircheck and jammer1954 are citizens without connection to the prosecution, their First Amendment right to anonymous speech will outweigh the Due Process rights of the defendant and no further disclosure, production or inspection of the information will be permitted. Otherwise, whether and, if

so, how and when the responsive information may be made available to the parties for

inspection will be established by further order of the court.

New Orleans, Louisiana, this ____14th____ day of February, 2014.


_____

JOSEPH C. WILKINSON, JR.

UNITED STATES MAGISTRATE JUDGE