UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 13-131** |
| **STACEY JACKSON** | **SECTION: "S" (2)** |

## OPINION

The Times-Picayune, L.L.C. has filed an appeal of the United States Magistrate Judge's Order and Reasons denying its motion to quash a subpoena served on it by defendant, Stacey Jackson, and requiring production of the requested material to the magistrate judge for an *in camera* inspection (Doc. #56). For the reasons that follow, the ruling of the magistrate judge (Doc. #47) is **AFFIRMED**.

**IT IS HEREBY ORDERED** that the Times-Picayune, L.L.C. produce all information responsive to the subpoena (Doc. #41) to United States Magistrate Judge Joseph C. Wilkinson, Jr. in his chambers, 500 Poydras Street, Room B-409, New Orleans Louisiana, for his *in camera* review no later than noon on April 1, 2014.

## BACKGROUND

On June 6, 2013, the Grand Jury in the United States District Court for the Eastern District of Louisiana filed a four-count Indictment against defendant, Stacey Jackson, charging her with conspiracy, solicitation of bribes, theft of federal funds and obstruction of justice in connection with her former employment as the executive director of the New Orleans Affordable Homeownership agency ("NOAH"). Approximately five years prior, the Times-Picayune posted articles on Nola.com regarding potential corruption within NOAH. Many bloggers commented on these articles. Doc. #56-1.

Jackson filed an *ex parte* motion for issuance of a subpoena *duces tecum* to the Times-Picayune and production prior to trial pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure seeking information that would identify two of the bloggers, "aircheck" and "jammer1954." Doc. #39. Jackson argued that posts authored by "aircheck" and "jammer1954" in response to articles about her or NOAH "obviously indicate government inside action," contain "verbiage akin to prosecutorial information and efforts; and obvious efforts to pressure suspects and targets of the investigation to cooperate with the government." Id. She contended that if these bloggers are government officials, such information would support a motion to dismiss the Indictment against her on prosecutorial misconduct grounds. The magistrate judge granted Jackson's motion (Doc. #40), and a subpoena was issued to the Times-Picayune ordering it to produce to Jackson's counsel by February 3, 2014:

> All documents related to the identity of the user names, "aircheck," and "jammer1954," including but not limited to (1) registration information, documents that provide all names, mailing addresses, email addresses, downstream and upstream email chains, phone numbers, billing information, date of account creation, account information, passwords, and all other identifying information associated with "aircheck," and "jammer1954," and (2) the usage/login information related to "aircheck," and "jammer1954," including but not limited to documents that provide IP [Internet Protocol] logs, IP address information at time of registration and subsequent usage, computer usage logs, or other means of recording information concerning the usage of "aircheck," and "jammer1954," from January 1, 2008, to the present.

Doc. #41.

The Times-Picayune filed a motion to quash the subpoena, arguing that the production was an unreasonable infringement on the bloggers' First Amendment right to anonymous free speech.

2

Doc. #42.  In ruling on that motion, the magistrate judge examined the factors established by the Supreme Court of the United States in United States v. Nixon, 94 S.Ct. 3090, 3103 (1974), for the issuance of a subpoena under Rule 17(c) of the Federal Rules of Criminal Procedure, and weighed Jackson's Fifth Amendment due process right against the bloggers' First Amendment right to anonymous free speech. Doc. #47.   He noted that the right to anonymous free speech is not unlimited, especially if the speaker is a prosecutor or other federal agent, who is subject to rules and regulations that restricts his or her ability to comment on ongoing investigations or cases pending within the scope of his or her official responsibilities. Id.   The magistrate judge discussed the recent experience in this jurisdiction were the former First Assistant and former Senior Litigation Counsel in the local United States Attorneys Office admitted to blogging about ongoing investigations and cases on Nola.com, under certain aliases and others that they could not recall.  Id. He noted that after this conduct was revealed, "at least seven defendants and two investigation targets in three different proceedings [had] convictions [] overturned, [an] indictment [] dismissed or [] investigation [] dropped." Id.  The magistrate judge ruled that, in light of such conduct, there was a "sufficient likelihood" that the subpoena at issue could lead to information relevant to Jackson's prosecutorial misconduct claim. Id. Thus, being mindful of the bloggers' First Amendment right to anonymous free speech, the magistrate judge ordered the Times-Picayune to submit the responsive documents to him for an *in camera* inspection, and stated that:

> If [he] determine[s] based upon [his] *in camera* review that aircheck and jammer1954 are citizens without connection to the prosecution, their First Amendment right to anonymous speech will outweigh the Due Process rights of the defendant and no further disclosure, production or inspection of the information will be permitted. Otherwise, whether and, if so, how and when the responsive information may be made available to the parties for inspection will be established by further order of the court.

Id.

This matter is before the court on an appeal of that order. The Times-Picayune argues that any production of the information that may identify the anonymous bloggers, even for an *in camera* inspection by the magistrate judge, is an unreasonable infringement on the bloggers' First Amendment right to anonymous free speech. It argues that to obtain information regarding the bloggers' identities, Jackson must present "evidence that the specific posters here are in fact federal officials and that the speech on its face is unlawful, in violation of her due process rights." Id. Jackson contends that she cannot prove that the bloggers are federal officials or that the speech is unlawful until she has the identifying information, and that the magistrate judge's modification of the subpoena to order an *in camera* inspection is "a great and fair compromise" that protects "the anonymity of any blogger that [is] not shown to be a government person." Doc. #57.

**ANALYSIS**

**A.     Standard of Review**

Pursuant to 28 U.S.C. § 636(b)(1)(A), a district judge may reconsider a pretrial matter determined by a magistrate judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." See also Merritt v. Int'l Bhd. of Boilmakers, 649 F.2d 1013, 1016 (5th Cir. 1981) ("[T]he magistrate possessed the authority under 28 U.S.C. § 636(b)(1)(A) to enter non-dispositive discovery orders[,]" which "are reviewable under the 'clearly erroneous and contrary to law' standard").

**B.     Rule 17(c) of the Federal Rules of Criminal Procedure**

Rule 17(c)(1) of the Federal Rules of Criminal Procedure permits the subpoena of "books, papers, documents, data, or other objects." The court may direct that the items be produced before

4

trial, and permit the parties and their attorneys to inspect all or part of them. Id. "A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise." United States v. Nixon, 94 S.Ct. 3090, 3103 (1974); FED. R. CRIM. P. 17(c)(2).

In Nixon, White House staff members and political supporters of President Nixon were indicted, and the Special Prosecutor filed a motion under Rule 17(c) for a subpoena *duces tecum* seeking the pre-trial production of certain tapes and documents relating to specifically identified conversations between the President and others. Id. at 3095. The President, citing executive privilege, moved to quash the subpoena. Id.

> The Nixon Court stated that, to require pre-trial production under Rule 17,
>
> the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and not intended as a general "fishing expedition."

Id. at 3103. Stated differently, the party seeking the production "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." Id. As to relevancy, the Court stated that there must be a "sufficient likelihood" that the subpoenaed materials are relevant. Id.

In this case, the magistrate judge's application of Nixon to the subpoena in question is not clearly erroneous or contrary to law. Considering all of the available information regarding the blogging incident in the local United States Attorneys Office, its impact on cases in this district, and the blogs regarding Jackson and/or NOAH authored by "aircheck" and "jammer1954," there is a "sufficient likelihood" that the information Jackson requested will lead to information relevant to her prosecutorial misconduct claim. Further, she cannot obtain this information from another source, and it is necessary for her to prepare pretrial motions. Finally, the subpoena is not a "fishing expedition,"

but is narrowly tailored to seek information regarding two specific bloggers whose posts have substantial similarities to ones known to have been posted by former prosecutors.[1] Therefore, the magistrate judge correctly determined that the subpoena complies with Rule 17(c).

---

[1] On August 12, 2008 "aircheck" posted the following comment praising law enforcement in response to an article about NOAH on Nola.com:

> . . . Feds can probably only fry one fish at a time from a manpower standpoint.
>
> Face it, these scums and BS thugster non-profits ARE STARTING TO FALL LIKE DOMINOES !!!!
>
> Federal law enforcement is starting to gain real momentum on this godforsaken group of criminal thugster-scums !!!!!
>
> I'm thankful the tide is finally starting to turn on this scum...
>
> Thank you to all Federal Law Enforcement, I appreciate your ongoing efforts !!!!! I would assume it is a painstaking process to investigate, interrogate, prosecute and incarcerate all of this SCUM.

On August 9, 2008, "campstblue," a known moniker of former Assistant United States Attorney Salvadore Perricone, similarly praised law enforcement in responding to an article about NOAH on Nola.com:

> well, man - you know, man. I didn't know anything about dis stuff, man, you hear what I'm saying, man. You know, man, like you always looking for something negative to write about, man. How's dis going to help the racovery, man, you hear what I'm saying, man. We just trying to make it back, man. Didn't you hear what I said man, dis is a choclate city, man and we do things the choclate way, man – you hear what I'm saying, man?
>
> TRANSLATION: It's our turn to steal. We got the power. You can't do anything to us.
>
> God Bless the US Attorneys office!!!!!!!!!

**C.     First Amendment Interests**

In <u>Nixon</u>, where after holding that the subpoena *duces tecum* complied with Rule 17(c), the Supreme Court of the United States, discussed the President's claim of executive privilege regarding the execution of the subpoena and the *in camera* review at issue. <u>Id.</u> at 3102-05.  The Court recognized a "presumptive privilege" regarding Presidential communications, an interest that "is weighty indeed and entitled to great respect." <u>Id.</u> at 3109.  However, the Court found that the district court did not err in ordering an *in camera* inspection of the material because the "presumptive privilege" is "based only on the generalized interest in confidentiality" and "must yield to the demonstrated, specific need for evidence in a pending criminal trial." <u>Id.</u> at 3110.

In this case, the magistrate judge properly found that the bloggers have a First Amendment right to anonymous speech. <u>Justice for All v. Faulkner</u>, 410 F.3d 760, 764 (5th Cir. 2005) (citing <u>McIntyre v. Ohio Elections Comm'n</u>, 115 S.Ct. 1511, 1516-17 (1995)). He also properly recognized that the right to anonymous speech is not unlimited, and that such limitation applies "even more stringently to federal prosecutors and other government agents and official engaged in criminal investigation and prosecution," who are subject to "[a] plethora of court decisions, professional conduct rules, federal regulations, Local Rules of court and provisions in the Department of Justice's own United States Attorneys Manual plac[ing] restrictions on their speech." Doc. #47 (citing <u>United States v. Bowen</u>, No. 10-204, 2013 WL 5233325, at *17-22 (E.D. La. Sept. 17, 2013)).

In balancing Jackson's need for the subpoenaed information against the bloggers' limited right to anonymous free speech, the magistrate judge determined that an *in camera* inspection would be the best vehicle to protect both interests.  Indeed, the <u>Nixon</u> Court found that an *in camera* inspection of the requested material was warranted when the President claimed an executive privilege in an

attempt to defeat a Rule 17 subpoena. Further, in United States v. LaRouche Campaign, 841 F.2d 1176, 1182 (1st Cir. 1988), the court, in weighing a defendants' need for information sought under a Rule 17 subpoena against the National Broadcasting Company, Inc.'s ("NBC") claim of journalistic privilege under the First Amendment, held that NBC's First Amendment interests did not outweigh the defendants' interest in the production of the subpoenaed material that was relevant to ensuring that the defendants had a fair trial under the Fifth and Sixth Amendments. In that case, the court concluded that *in camera* production was appropriate because the district court would "balance the competing constitutional interests, limiting disclosure of [materials protected by the First Amendment] to those cases where their use would, in fact, be of significant utility to a criminal defendant." Id. at 1183. The court further observed that:

> An *in camera* proceeding seems especially suited to the needs of all parties in cases like this – where there is a very likely need for materials by the defense, a very real if generalized concern about excessive disclosure on the party of the media, a judicial economy interest in avoiding delay during trial, and the possibility that by the time a decision must be made on disclosure to a party the need for disclosure will have disappeared or diminished.

Id.

In light of these authorities, the magistrate judge's order in this case requiring an *in camera* inspection of the materials sought by Jackson from the Times-Picayune was not clearly erroneous or contrary to law. In his order, the magistrate judge specified that he would safeguard the identifying information of the bloggers if they are private citizens, but would determine what further actions are necessary if they are indeed government attorneys or agents. Therefore, the magistrate judge's ruling is AFFIRMED.

**CONCLUSION**

**IT IS HEREBY ORDERED** that the ruling of the magistrate judge denying the Times-Picayune's motion to quash and requiring the production of the requested material to the magistrate judge for an *in camera* inspection (Doc. #47) is **AFFIRMED**.

**IT IS HEREBY ORDERED** that the Times-Picayune, L.L.C. produce all information responsive to the subpoena (Doc. #41) to United States Magistrate Judge Joseph C. Wilkinson, Jr. in his chambers, 500 Poydras Street, Room B-409, New Orleans Louisiana, for his *in camera* review no later than noon on April 1, 2014.

New Orleans, Louisiana, this __26th__ day of March, 2014.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**