## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                          **CRIMINAL ACTION**

**VERSUS**                                                          **NO:  13-131**

**STACEY JACKSON**                                       **SECTION: "S" (2)**

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Stacey Jackson's Motion to Dismiss - Passage of Time
(Doc. #81) is **DENIED**.

### BACKGROUND

This motion challenges whether an indictment filed on June 6, 2013, for acts committed on
various dates between January 2005 and August 2008 is timely.  Specifically, defendant, Stacey
Jackson, contends that the indictment does not allege that an overt act in furtherance of a conspiracy
occurred prior to June 6, 2008, or that specific acts of bribery or theft of public money occurred
before that date.

On June 6, 2013, the Grand Jury in the United States District Court for the Eastern District
of Louisiana filed a four-count indictment against Jackson. Count 1 of the indictment charges that
from January 2005 through August 2008, Jackson, Trellis Smith, Earl Myers and others conspired
to commit bribery in violation of 18 U.S.C. § 666(a)(1)(B) and theft of public money in violation
of 18 U.S.C. § 641; all in violation of 18 U.S.C. § 371.  Count 1 outlines a scheme in which Jackson,
the former executive director of the New Orleans Affordable Homeownership agency ("NOAH"),
would overpay Smith and Myers for work that they performed under contracts with NOAH, and then
she would receive a portion of the overpayment from Smith and Myers as a "kickback" in exchange
for continuing to give them work as NOAH contractors.  Counts 2 and 3 charge Jackson with a
specific act of bribery in violation of § 666(a)(1)(B) and stealing public money in violation of 18

U.S.C. § 641, respectively, in connection with her former employment at NOAH.  Count 4 charges

her with obstructing justice by providing false documentation to a Federal Grand Jury in violation

of 18 U.S.C. § 1503(a). Jackson filed a motion to dismiss the indictment, arguing that it was

untimely filed.

## ANALYSIS

**A.    Motion to Dismiss an Indictment: Statute of Limitations**

The statute of limitations for all of the charges against Jackson is found in 18 U.S.C. § 3282,

which provides that the prosecution of any federal offense not punishable by death must be

commenced "within five years next after such offense shall have been committed", unless the statute

of limitations period for a particular offense is expressly stated.  18 U.S.C. § 3282.   The statute of

limitations begins to run the day after the offense in completed.  United States v. Butler, 792 F.2d

1528, 1532 (11th Cir. 1986). The Supreme Court of the United States has explained that statutes of

limitations:

> represent legislative assessments of relative interests of the State and
> the defendant in administering and receiving justice; they are made
> for the repose of society and the protection of those who may (during
> the limitation) . . . have lost their means of defense.  These statutes
> provide predictability by specifying a limit beyond which there is an
> irrebuttable presumption that a defendant's right to a fair trial would
> be prejudiced.

United States v. Marion, 92 S.Ct. 455, 464-65 n. 14 (1971) (internal quotations and citations

omitted).  Thus, "[c]riminal limitations statutes are to be liberally interpreted in favor of repose,"

because:

> [t]he purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions.   Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.  Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity.

Toussie v. United States, 90 S.Ct. 858, 860 (1970).

When considering a motion to dismiss an indictment, the court must accept the allegations in the indictment as true. Boyce Motor Lines v. United States, 72 S.Ct. 329, 332 n.16 (1952). A defendant may not challenge an indictment that is valid on its face on the ground that the allegations are not supported by adequate evidence, because weighing the evidence is the function of the jury. United States v. Mann, 517 F.2d 259, 267 (5th Cir. 1975) (citing Costello v. United States, 76 S.Ct. 406, 409 (1956)).

## B.      Count 1 - Conspiracy in Violation of 18 U.S.C. § 371

Section 371, Title 18 of the United States Code imposes criminal penalties, "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons to do any act to effect the object of the conspiracy . . ." 18 U.S.C. § 371.  For conspiracy charges to be timely filed under 18 U.S.C. § 3282, the government "must show the existence of the conspiracy within the five years prior to the return of the indictment, and must allege and prove the commission of at least one overt act by one of the conspirators within that period in furtherance of the conspiratorial agreement." United States v. Davis, 533 F.2d 921, 926 (5th Cir. 1976) (citing Grunewald v. United States, 77 S.Ct. 963, 969-70 (1957)).   A conspiracy continues until a

3

participant "realize[s] fully [her] anticipated economic benefits." United States v. Girard, 744 F.2d 1170, 1172 (5th Cir. 1984).  In Grunewald, 77 S.Ct. at 970, the Supreme Court of the United States explained: "[t]he crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy."  Moreover, "a subsidiary conspiracy to conceal and acts in furtherance thereof after the main criminal purpose of the conspiracy has been accomplished" do not extend the statute of limitations, Davis, 533 F.2d at 928, unless there is "an express original agreement among the conspirators to continue to act in concert in order to cover up, for their own self-protection, traces of the crime after its commission." Grunewald, 77 S.Ct. at 974. ("[A] vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime").

Count 1 of the indictment against Jackson defines the conspiracy as follows:

### B.  THE CONSPIRACY

From in or near January 2005 through in or near August 2008, in the Eastern District of Louisiana, the defendant, **STACEY JACKSON**, did knowingly and willfully combine, conspire, and confederate and agree with Trellis Smith, Earl Myers, Individual A, and others known and unknown to the Grand Jury to:

1. corruptly solicit, demand, accept, and agree to accept something of value from Trellis Smith, Earl Myers, and others known and unknown to the Grand Jury, with the intention of being influenced and rewarded in connection with a business, transaction, and series of transactions of NOAH, an agency which contracted with the City of New Orleans and HUD, which received benefits in excess of $10,000 in each year from January 2005 to August 2008

4

under a Federal program, involving a value of $5,000 or more, in violation of Title 18, United States Code, Section 666(a)(1)(B); and,

2. embezzle, steal, purloin, and knowingly convert to personal use money and things of value to the United States and its agency the Department of Housing and Urban Development, in violation of Title 18, United States Code, Section 641.

To comply with the five-year statute of limitations, the indictment must allege that an act in furtherance of the conspiracy to commit bribery in violation of § 666(a)(1)(B), and an act in furtherance of the conspiracy to steal public money in violation of § 641 occurred within five years of June 6, 2013. To that end, the indictment alleges, in pertinent part, the following overt acts occurred within the applicable period:

## C. OVERT ACTS

In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Eastern District of Louisiana and elsewhere:

\*         \*         \*

10. On or about May 22, 2008, the defendant, **STACEY JACKSON**, wrote out a check drawn on NOAH's account, payable to Myers and Sons for approximately $16,420.80 and instructed Earl Myers to give portions of this money to different entities and individuals that **STACEY JACKSON** knew or was affiliated with.

a. The defendant, **STACEY JACKSON**, instructed Earl Myers to "kickback" a portion of this money to her by having him cash the check and provide the defendant, **STACEY JACKSON**, with half the proceeds.

b. Pursuant to **STACEY JACKSON'S** instructions, on or about June 6, 2008, Earl Myers wrote a check out to Cash for approximately $8,000.00 and provided the proceeds to the defendant, **STACEY JACKSON**.

    c.  Earl Myers understood that "kicking back" a portion of the NOAH check for **STACEY JACKSON'S** benefit would ensure that he would continue getting NOAH remediation work assignments from the defendant.

11.  On or about May 26, 2008, the defendant, **STACEY JACKSON**, wrote out a check, drawn on NOAH's account, payable to Excel Development for approximately $19,528.00 and instructed Earl Myers to give portions of this money to different entities and individuals that **STACEY JACKSON** knew or was affiliated with.

    a.  The defendant, **STACEY JACKSON**, instructed Earl Myers to "kickback" a portion of this money to her by having him pay a landscaper approximately $3,000 for work performed on her mother's home in New Orleans, Louisiana, which Earl Myers did, on or about June 6, 2008, pursuant to **STACEY JACKSON'S** instructions.

    b.  Additionally, and pursuant to **STACEY JACKSON'S** instructions, on or about June 6, 2008, Earl Myers wrote a check out to Cash for approximately $4,000.00 and provided the proceeds to the defendant, **STACEY JACKSON.**

    c.  Earl Myers understood that "kicking back" a portion of the NOAH check for **STACEY JACKSON'S** benefit would ensure that he would continue getting NOAH remediation work assignments from the defendant.

Jackson argues that the Overt Acts 10 and 11 do not fall within the statute of limitations because "the evidence will show that NOAH operations had ceased, and contracts were not given, particularly to the co-conspirators, Trellis Smith and Myers, after approximately the middle of 2007, due to lack of funding."  She argues that the allegation that the co-conspirators gave her "kickbacks" to "'ensure that [they] would continue getting NOAH remediation work assignments from the defendant,' is an impossible and non-factual statement," because "there was nothing to 'ensure' in November, 2007 to May 26, 2008, and, particularly on June 6, 2008."  As a result, Jackson concludes that "Overt Acts 10 and 11, could not be a criminal conspiratorial act, because there was

6

no consideration, *quid pro quo*, for payments by that late date - there were no contracts to let by Ms Jackson, in return for the bribes and kickbacks by the contractors, co-conspirators." Jackson further argues that Overt Acts 10 and 11 may not have been done in furtherance of the conspiracy because the government has not proved that Myers did not submit proper invoices for the work.  Therefore, she contends that the payments may have been lawful.

The government argues that it has met its burden to allege overt acts occurred in furtherance of the conspiracy within the applicable limitations period.  It points out that Jackson's arguments regarding NOAH's continued operation and assignments of work, and whether Myers submitted proper invoices to support the payments are factual issues that cannot be determined on a motion to dismiss.[1]

---

[1]  The government also argues that the allegations regarding the submission of false invoices to the Grand Jury alleged in Overt Act 6 is an overt act within the limitations period.  Overt Act 6 alleges:

> 6.     On numerous occasions from in or near April 2006 through in or near July 2008, Earl Myers corruptly agreed with the defendant, **STACEY JACKSON**, that Myers would be paid an "overpayment" in numerous NOAH checks that exceeded the amount of money he or his companies Myers and Sons or Excel Development were owed for work that he and his subcontractors actually performed on home remediation.

> a.     Specifically, various NOAH checks included an overpayment that the defendant, **STACEY JACKSON**, and Earl Myers knew could not be substantiated by invoices or work actually performed.

> i.     In or near August 2008, upon learning of a Grand Jury subpoena for records relating to NOAH payments to Earl Myers and his companies, the defendant, **STACEY JACKSON**, with the knowledge and assistance of others known and unknown to the Grand Jury, fabricated documents and invoices that purported to prove and establish that Earl Myers has actually performed work that would justify all the money NOAH had paid to him.

> ii.    The documents and invoices that the defendant, **STACEY JACKSON**, created were delivered to Earl Myers by Individual A, a person **STACEY JACKSON** knew personally.

Overt Acts 10 and 11 allege that Myers and Jackson both committed overt acts in furtherance of the conspiracy on June 6, 2008.  Specifically, Overt Acts 10 and 11 allege that Myers gave Jackson, and she accepted, "kickbacks" on that date.  Jackson does not dispute that the indictment alleges that they committed overt acts in furtherance of the conspiracy on June 6, 2008.  Rather, she presents factual arguments in defense of her case.  Specifically, Jackson contends that alleged Overt Acts 10 and 11 did not occur in furtherance of the conspiracy because NOAH was no longer assigning work in June 2008, and the government has not proved that Myers did not submit legitimate invoices to support the payments represented by the checks Jackson wrote to him on NOAH's account on May 22, 2008, and May 26, 2008.[2]  Jackson's statute of limitations argument regarding Count 1 asks the court to go beyond the allegations in the indictment and analyze the facts of the case prior to trial.  For the purposes of a motion to dismiss, the court must accept the allegations in the indictment as true, <u>Boyce Motor Lines</u>, 72 S.Ct. at 332 n.16, and may not weigh the evidence, which is the jury's function.   <u>Mann</u>, 517 F.2d at 267.  Because the court must accept the allegations in the indictment as true, and Overt Acts 10 and 11 clearly allege that an overt act occurred with in the statute of limitations, Jackson's motion to dismiss Count 1 based on the statute of limitations is DENIED.

---

b.      It was part of the agreement between the defendant, **STACEY JACKSON**, and Earl Myers that Myers would give a portion of these overpayments to **STACEY JACKSON** as "kickbacks," thus ensuring that Earl Myers would continue to get work from NOAH.

Because the court finds that Overt Acts 10 and 11 satisfy the statute of limitations, it is unnecessary to determine whether  Overt Act 6 was part of the original conspiracy, thus extending the statute of limitations to August 2008, or a subsidiary conspiracy to conceal the original conspiracy, which would not extend the statute of limitations. <u>Davis</u>, 533 F.2d at 928.

[2] According to the government's opposition, it intends to establish that NOAH did not cease operations in mid-2007 because its contract with the City of New Orleans was extended to June 30, 2008.

C. **Count 2 – Agent of an Organization Receiving Federal Funds Soliciting or Accepting a Bribe in Violation of 18 U.S.C. § 666(a)(1)(B)**

Under 18 U.S.C. § 666(a)(1)(B) it is a crime for "an agent of an organization, or of a State, local, or Indian tribal government, or any agency there of" to:

> corruptly solicit[] or demand[] for the benefit of any person, or accept[] or agree[] to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government or agency involving any thing of value of $5,000 or more

when  "the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." 18 U.S.C. § 666(a)(1)(B).

Count 2 of the indictment against Jackson alleges:

> Between on or about May 26, 2008 and on or about June 6, 2008, in the Eastern District of Louisiana, defendant **STACEY JACKSON** did knowingly and corruptly solicit, demand, accept or agree to accept, a thing of value from Earl Myers, intending to be influenced and rewarded in connection with giving continued business and remediation work in connection with the New Orleans Affordable Homeownership program, involving something of value of $5,000 or more.

> All in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.[3]

---

[3] Section 2, Title 18 of the United States Code provides:

(a) Whoever commits an offense against the United States or aids, abets, or counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2.  In United States v. Rabhan, 540 F.3d 344, 348-49 (5th Cir. 2008), the United States Court of Appeals for the Fifth Circuit explained the statue of limitations applicable to § 2 as follows:

The bribery alleged in Count 2 refers to Overt Act 11 of Count 1 where Jackson, on May 26, 2008, allegedly wrote a check on NOAH's account to Excel Development for $19,528.00 and instructed Myers to "kickback" portions of the money to her in various forms.  It further alleges that on June 6, 2008, Myers paid a landscaper $3,000 on Jackson's behalf, and "wrote a check out to Cash for approximately $4,000.00 and provided the proceeds to" Jackson.  Jackson argues that the indictment is untimely as to Count 2 because the alleged bribery was completed when she wrote the check to Myers from NOAH's account on May 26, 2008, which she contends is the day that the money was "removed from NOAH."

The government argues that the alleged bribery was not completed until Jackson actually received the "payoff."  According to the government, Jackson received the "payoffs" on June 6, 2008, when Myers wrote out a check to cash and provided the proceeds to Jackson, and June 16, 2008, when the landscaper cashed the cashier's check Myers gave him in payment for Jackson's account.

---

An aidor-abetor is guilty in a derivative sense; his guilt is contingent on the acts of another.  Courts have recognized this relationship by holding that aiding and abetting is governed by the statute of limitations applicable to the predicate offense.  Furthermore, we have noted that § 2 does not establish a separate crime of "aiding and abetting."  Rather it allows a jury to find a person guilty of a substantive crime even though that person did not commit all acts constituting the elements of the crime.  That is, Section 2 does not define a crime . . . aiding and abetting is simply a different method of demonstrating liability for the substantive offense (and one which is derivative of, rather than separate from, the underlying substantive offense). . . A person is not guilty *of* a § 2 offense; rather, *through* § 2 a person is guilty *of* an underlying offense, such as [§666(a)(1)(B)].

Thus, the statute of limitations analysis applicable to the substantive offense,§ 666(a)(1)(B) also applies to § 2.

The statute of limitations for criminal laws generally begins to run when the crime is completed, which means that all of the elements are met.  Pendergast v. United States, 63 S.Ct. 268, 271 (1943); Toussie, 90 S.Ct. at 860.  The Fifth Circuit Pattern Jury Instructions for § 666(a)(1)(B) state that the elements of a violation of that statute are:

> *First*: That the defendant was an agent of [an organization, State, local or Indian tribal government, or any agency thereof];
>
> *Second*: That [the organization, State, local or Indian tribal government, or any agency thereof] was [an organization, State, local or Indian tribal government, or any agency thereof] that received in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant [contract] [subsidy] [loan] [guarantee] [insurance] [other form of federal assistance];
>
> *Third*: That the defendant corruptly solicited [demanded for the benefit of any person] [accepted] [agreed to accept] anything of value from any person with the intent to be influenced [rewarded] in connection with any business [transaction] [series of transactions] of such [organization, State, local or Indian tribal government, or any agency thereof]; and
>
> *Fourth*: That the business [transaction] [series of transactions] involved anything of value of $5,000 or more.

Elements three and four are pertinent to Jackson's motion.  The indictment alleges that Jackson violated § 666(a)(1)(B) when she "intending to be influenced and rewarded" accepted the "thing of value" worth $5,000 or more, which was the  cash on June 6, 2008, and the payment to the landscaper on her behalf on June 16, 2008.  Thus, the statute of limitation commenced on June 17, 2008, and the June 6, 2013, indictment was timely filed as to Count 2. Butler, 792 F.2d at 1532 (the statute of limitations begins to run the day after the offense is committed). As such, Jackson's motion to dismiss Count 2 as untimely is DENIED.

D.      **Count 3 – Theft of Public Money**

Section 641, Title 18 of the United States Code imposes criminal penalties on:

> [w]hoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof.

18 U.S.C. § 641.

Count 3 of the indictment against Jackson alleges:

> Between on or about May 26, 2008 and on or about June 6, 2008, in the Eastern District of Louisiana, the defendant, **STACEY JACKSON**, did willfully and knowingly embezzle, steal, purloin, and convert to her own use, money and funds belonging to the United States, namely its agency the Department of Housing and Urban Development, by writing a check for approximately $19,528.80 from a NOAH bank account, which she controlled and which had received the funds belonging to the United States, to Excel Development Corporation, a company owned by Earl Myers, an amount of money that she knew Excel Development had not earned, and thereafter did receive a portion of those funds in the form of cash and other things of value from Earl Myers.

> All in violation of Title 18, United States Code, Section 641.

The theft of public money alleged in Count 3 refers to Overt Act 11 of Count 1 where Jackson, on May 26, 2008, allegedly wrote a check on NOAH's account to Excel Development for $19,528.00 and instructed Myers to "kickback" portions of the money to her in various forms. It further alleges that on June 6, 2008, Myers paid a landscaper $3,000 on Jackson's behalf, and "wrote a check out to Cash for approximately $4,000.00 and provided the proceeds to" Jackson. Jackson argues that the indictment is untimely as to Count 3 because the alleged theft was completed when she wrote the check to Myers from NOAH's account on May 26, 2008, which she contends is the day

12

that the money was "removed from NOAH."  The government argues that the theft was not completed

when Jackson wrote the check to Myers on NOAH's account, but rather, when Myers cashed that

check.

As stated above, the statute of limitations for criminal laws generally begins to run when the

crime is completed, which means that all of the elements are met.  Pendergast, 63 S.Ct. at 271;

Toussie, 90 S.Ct. at 860.  The Fifth Circuit Pattern Jury Instructions for §641 state that the elements

of a violation of that statute are:

> *First*: That the money [property] [thing of value] described in the
> indictment belonged to the United States government and had a
> value in excess of $1,000 at the time alleged;
>
> *Second*: That the defendant embezzled [stole] [knowingly converted]
> such money [property] [thing of value] to the defendant's own use
> [to the use of another]; and
>
> *Third*: That the defendant did so knowing the money [property]
> [thing of value] was not [hers], and with the intent to deprive the
> owner of the use [benefit] of the money [property] [thing of value].

The violation 18 U.S.C. § 641 alleged in the indictment was completed when Jackson allegedly

embezzled, stole, purloined, and converted to her own use, money and funds belonging to the United

States.  The Fifth Circuit Pattern Jury Instructions for § 641 states that "[t]o 'steal' or 'knowingly

convert' means to wrongfully take money, property or a thing of value belonging to another with the

intent to deprive the owner of its use or benefit either temporarily or permanently."  Although

Jackson allegedly had the intent to deprive NOAH of the use or benefit of the money when she wrote

the check on May 26, 2008, she did not allegedly steal money belonging to the United States until

it was actually taken from NOAH's account, which occurred on June 6, 2008, when Myers cashed

the check. See United States v. Maxwell, 588 F.2d 568, 574 (7th Cir. 1978) (When the money in an

13

account on which a check is written is money of the United States, it is converted when the bank debits the account as a result of honoring the check).  Thus, the statute of limitation commenced on June 7, 2006, and the June 6, 2013, indictment was timely filed as to Count 3. <u>Butler</u>, 792 F.2d at 1532 (the statute of limitations begins to run the day after the offense is committed).  As such, Jackson's motion to dismiss Count 3 as untimely is DENIED.

**E.      Delay in Filing the Indictment**

Jackson argues that the entire indictment should be dismissed because the government unreasonably delayed in filing it.  She contends that the government's delay of five years in filing the indictment was unjustified because it filed charges against, and obtained guilty pleas from, alleged coconspirators and cooperating witnesses regarding the same conduct long before it filed the indictment against her.  Specifically, the government filed bills of information against Trellis Smith and Earl Myers on March 8, 2012, charging them with conspiracy to commit theft in connection with a program receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(A); all in violation of 18 U.S.C. § 371. <u>United States v. Smith</u>, Criminal Action No. 12-123, Doc. #1 (E.D. La. 3/8/2012); <u>United States v. Myers</u>, Criminal Action No. 12-124, Doc. #1 (E.D. La. 3/8/2012). Trellis Smith pleaded guilty on May 16, 2012, and Earl Myers pleaded guilty on April 26, 2012.  Jackson also points out that the same lead prosecutor has been assigned to her case since the inception of the investigation, and therefore charges against her could have been filed much sooner than June 6, 2013.

Rule 48(b)(2) of the Federal Rules of Criminal Procedure states that the court may dismiss an indictment if there is unnecessary delay in presenting the charge to a grand jury. FED. R. CRIM. P. 48(b)(2).  However, "absent a showing of extreme prejudice amounting to a Fifth Amendment denial of due process, the commencement of prosecution is controlled exclusively by the applicable

14

statute of limitations." <u>United States v. Smith</u>, 487 F.2d 175, 177 (5th Cir. 1973) (citing <u>United States v. Davis</u>, 487 F.2d 112 (5th Cir. 1973)).  To prevail on a claim that pre-indictment delay violated due process, the defendant must show that the delay "'was intentionally brought about by the Government for the purpose of gaining some tactical advantage over the accused in the contemplated prosecution or for some other bad faith purpose'" and that the delay "'caused actual, substantial prejudice to his defense.'" <u>United States v. Proctor</u>, 505 F.3d 366, 370 (5th Cir. 2007) (quoting <u>United States v. Couch</u>, 894 F.3d 1497, 1515 (5th Cir. 1996) (en banc)).

Jackson argues that she has been prejudiced by the government's delay in filing the indictment against her.  Jackson points to other prosecutions and the consistency of the United States Attorney's Office personnel assigned to the prosecution to suggest that the charges against her should have been filed sooner.  However, Jackson has not alleged nor proved any actual, substantial prejudice constituting a denial of due process or that the government intentionally brought about the delay in filing charges against her to gain a tactical advantage over her or for some other bad faith purpose.  Therefore, Jackson's arguments that the charges could have been filed sooner, do not demonstrate a pre-indictment delay in violation of due process, and the motion to dismiss the entire indictment under Rule 48(b)(2) is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Stacey Jackson's Motion to Dismiss - Passage of Time (Doc. #81) is **DENIED**.

New Orleans, Louisiana, this  25th  day of April, 2014.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

16