UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 13-131 |
| STACEY JACKSON | SECTION "S" (2) |

### ORDER AND REASONS ON DISCOVERY MATTERS

Three matters relating to discovery initiated by defendant are pending in this case: (1) in camera review of materials relating to the Nola.com commenter "aircheck" produced to the court in response to defendant's subpoena to The Times Picayune, L.L.C. d/b/a NOLA Media Group ("The Times-Picayune"), Record Doc. Nos. 47, 71, 99; (2) defendant's "Motion for Production of OPR Report," Record Doc. No. 134; and (3) defendant's "Second Motion for Issuance of Subpoena Duces Tecum and Production Prior to Trial; Rule 17(c), Fed. R. Crim. P.," Record Doc. No. 140, concerning the Nola.com commenter "kefir."

Because the in camera review of materials related to these matters has been jointly conducted by both of the undersigned judges and in light of the close relationship of these matters to defendant's motion to dismiss on grounds of prosecutorial misconduct, Record Doc. No. 110, which is simultaneously pending and under advisement, this order is being jointly signed and issued. Having considered the record, the in camera materials, the

applicable law and the oral and written submissions of counsel, **IT IS ORDERED** that these matters are determined as follows.

(A)     Aircheck

The court has exhausted its in camera review of materials produced by The Times-Picayune in response to defendant's subpoena concerning the Nola.com commenter who used the pseudonym aircheck. As the court previously noted, Record Doc. No. 104, the materials received from The Times-Picayune in response to the subpoena do not identify Nola.com commenters by name. Unlike the commenter who used the pseudonym jammer1954, aircheck provided currently unverifiable registration information to Nola.com and apparently employed numerous communications devices, locations and electronic communications providers in posting voluminous comments. In addition, the time-restrictive retention policies of the electronic communications providers concerning information that might identify users from ip addresses, ranging from only six to twelve months into the past, inhibited the court's ability to identify aircheck, whose comments date back several years.[1]

Accordingly, the court's in camera evaluation of the subpoenaed materials concerning the Nola.com commenter aircheck is concluded. The actual identity of aircheck cannot be determined by the court within the limited scope of its in camera review. Since

---

[1] Aircheck's latest comment contained in the in camera materials produced by The Times-Picayune was created on September 17, 2009.

aircheck cannot be identified as a prosecutor or government agent connected to the investigation or prosecution of defendant, the court finds that the commenter's limited First Amendment right to anonymous speech on matters of public interest outweighs the defendant's Due Process rights. Under these circumstances, the materials submitted to the court by The Times-Picayune in response to defendant's subpoena will <u>not</u> be made available to defendant or any other party for inspection, and The Times-Picayune's obligation to respond to this subpoena and the court's orders concerning it are SATISFIED.

(B)     <u>OPR Report</u>

In this motion, defendant seeks an order compelling the government to provide her with a copy of the written report of the United States Department of Justice Office of Professional Responsibility ("OPR Report") concerning its investigation, findings and conclusions as to prosecutorial misconduct stemming from commenting on Nola.com about cases and investigations conducted by the local United States Attorney's Office. The OPR Report, dated December 20, 2013, consists of 152 pages and more than 100 additional pages of exhibits and related correspondence. It has now been reviewed in camera by the court.

The report unequivocally concludes that both former First Assistant United States Attorney Jan Mann and former Assistant United States Attorney/Senior Litigation Counsel Sal Perricone engaged in extensive and intentional prosecutorial misconduct in connection

with a number of criminal investigations and prosecutions in this court,[2] although <u>not</u> in the case against Stacey Jackson or the underlying investigation of the New Orleans Affordable Home Ownership program ("NOAH"), which Jackson administered. To some extent, the OPR investigation and resulting report appear to have been more broad-ranging than the so-called Horn Report that was the subject of defendant's prior motion to compel and the court's resulting order. Record Doc. Nos. 17, 33. Unlike the Horn Report, which was conducted in connection with and thereby limited to a substantial degree to prosecutorial misconduct occurring in connection with <u>United States v. Bowen,</u> 969 F. Supp. 2d 546 (E.D. La. 2013), the OPR Report examined in broader terms the possibility of wider-ranging prosecutorial misconduct in other matters, not just by Mann and Perricone but also by others in the office of Jim Letten, the former United States Attorney for the Eastern District of Louisiana.

The court again applies the same legal standard in determining this motion as in defendant's previous motion to compel production of the Horn Report. Specifically, the scope of discovery in a criminal case is much more restrictive than the scope of civil

---

[2] These matters identified in the OPR Report include <u>United States v. Bowen</u>, Crim. No. 10-204 "N"(1); <u>United States v. Dugue</u>, Crim. No. 10-204 "N"(1); <u>United States v. Gill Pratt et al.</u>, Crim. No. 08-140 "B"(1); <u>United States v. Jefferson</u>, Crim. No. 08-85 "S"(2); <u>United States v. Meffert</u>, Crim. No. 09-374 "L"(5); <u>United States v. Broussard</u>, Crim. No. 11-299 (HH); <u>United States v. Fazzio</u>, Crim. No. 11-157 "C"(5); <u>United States v. St. Pierre</u>, Crim. No. 09-374 "L"(5); <u>United States v. Mouton</u>, Crim. No. 11-48 "F"(5); <u>United States v. Brooks-Simms</u>, Crim. No. 07-228 "F"(1); and the River Birch Landfill grand jury investigation, <u>see</u> <u>Heebe et al. v. United States</u>, C.A. No. 10-3452 "C"(5).

discovery. A defendant in a criminal case may obtain this kind of discovery only if the requested "item is <u>material</u> to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i) (emphasis added). A criminal defendant bears the burden of showing "some indication that pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof <u>in</u> <u>his</u> <u>favor</u>." <u>United States v. Ross</u>, 511 F.2d 757, 763 (5th Cir. 1975) (emphasis added); <u>accord</u> <u>United States v. Dobbins</u>, 482 F. App'x 35, 41 (6th Cir. 2012); <u>United States v. Caro</u>, 597 F.3d 608, 621 (4th Cir. 2010); <u>United States v. Jordan</u>, 316 F.3d 1215, 1251 (11th Cir. 2003). Mere "abstract logical relationship to the issues in the case" is insufficient to require production. <u>Ross</u>, 511 F.2d at 762. Evidence is considered material only "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." <u>Caro</u>, 597 F.3d at 621 (quoting <u>United States v. Lloyd</u>, 992 F.2d 348, 351 (D.C. Cir. 1993)); <u>accord</u> <u>United States v. Clingman</u>, 521 F. App'x 386, 392 (6th Cir. 2013); <u>United States v. Gladdis</u>, 877 F.2d 605, 611 (7th Cir. 1989).

    For the following reasons, the court concludes that, while the OPR Report may well be material and discoverable as to other cases and investigations addressed in it, the report does not fall within the restrictive materiality boundaries of federal criminal discovery in Stacey Jackson's particular case, principally because it would not significantly alter the quantum of proof in her favor.

The overall conclusion of the OPR Report is that prosecutorial misconduct of the kind committed by Perricone and Mann was confined to them and was neither sanctioned by the United States Attorney nor engaged in by others in the office. In summary, the OPR Report concludes that "[t]he evidence is insufficient to establish by a preponderance of the evidence that" the former United States Attorney or anyone else in his office "was aware contemporaneously" of the misconduct of Mann and Perricone, or even that Mann and Perricone were "aware contemporaneously" of each other's posting activities. The OPR Report also concludes that there is "no evidence establishing" that anyone in the United States Attorney's Office, apart from Mann and Perricone, engaged in misconduct of any kind. It concludes that while others in the office may have suspected that Perricone was posting, none actually knew that he was, and none "knew or suspected that Mann was posting comments online about" office matters. While the report recognizes circumstances giving rise to a "reasonable suspicion" of either coordination or knowledge by Mann and Perricone of each other's posting activities, it does not support a conclusion that a pattern, policy or practice to influence public opinion about the guilt of defendants or targets of investigations existed in the office of the former United States Attorney as a whole of the kind that might be material to Stacey Jackson's defense. The OPR Report concludes: "Without access to information protected by [N]ola.com, OPR cannot state with absolute certainty that no USAO employee other than Perricone and Mann made online extrajudicial statements about active Department [of Justice] investigations or pending cases.

Nonetheless, neither OPR nor [the Horn Report], using available investigative techniques and resources, found evidence establishing that other USAO employees made extrajudicial statements about Department investigations or pending cases through online postings."[3]

In addition, the OPR report cites no evidence that might support either a conclusion or defendant's argument that any grand jury leak or other violation of Fed. R. Crim. P. 6(e) occurred or is evident in Nola.com postings attributable to Perricone or Mann.

Moreover, the report contains no reference to prosecutorial misconduct occurring in Stacey Jackson's specific case or the NOAH investigation underlying it. The racially inflammatory comment by Perricone identified in the OPR Report, which was posted to an article about the NOAH investigation and Stacey Jackson, is already known to defendant, cited and quoted in support of her motion to dismiss. Record Doc. No. 110-1 at p. 2. This Perricone comment itself makes no specific reference by name to defendant or the agency she administered. Instead, it is aimed at the local African-American community as a whole and the administration of former New Orleans Mayor Ray Nagin generally. Unlike other cases and investigations conducted in this district, some of which are ongoing, the OPR Report itself makes no specific reference, recitation of evidence, findings or conclusions of any kind as to any prosecutorial misconduct whatsoever occurring directly in connection with the NOAH investigation or Stacey Jackson.

---

[3]OPR Report at p. 149.

A central theme of defendant's pending motion to dismiss is the defense of selective prosecution based upon racial bias. The OPR Report concludes that "[s]ome of Perricone's postings can reasonably be interpreted as evidencing racial bias against African-Americans" and "could reasonably be interpreted as evidencing racial animus."[4] The Perricone posting noted above, Record Doc. No. 110-1 at p. 2, is one such comment.

Similarly, the Horn Report previously reviewed in camera by the court contains Nola.com comments posted under the pseudonym "thewizard," some of which also could reasonably be interpreted as exhibiting racial bias toward the local African-American community.[5] Thewizard is identified by his actual name in the materials provided to the court for in camera review as a special agent of the Federal Bureau of Investigation ("FBI"). The in camera materials also include that FBI agent's real name, along with dozens of others, in "List(s) of Persons Designated for Disclosure" in the NOAH proceedings as one of the "government personnel . . . designated by the Assistant United States Attorney to assist him in the performance of his duty." The in camera materials include an affidavit that describes this agent's role in the NOAH investigation as limited to interviewing only two homeowners in April 2009, neither of whom ever heard of NOAH, applied for NOAH aid or provided any part of the government's evidence used to

---

[4] OPR Report at pp. 4, 78, 151.

[5] For example, one comment by thewizard characterizes the local African-American community as "on the extreme low end." Another asserts that African-Americans vote for elected officials principally based upon the race of the candidate.

obtain any indictment or bill of information, and states that the FBI agent himself did not appear before any grand jury concerning the subject investigation. While thewizard posted comments related to the <u>Bowen</u> and River Birch landfill matters, none of thewizard's postings refer to or were made in connection with any Nola.com article concerning NOAH or Stacey Jackson.

In a civil case, these kinds of materials would likely be discoverable as related to defendant's contention in her pending motion to dismiss that she has been subjected to "racial targeting and profiling" and investigated and prosecuted "because of the color of her skin." Record Doc. No.110-1 at p. 4. However, in making these arguments, Stacey Jackson asserts the defense of selective prosecution. <u>United States v. Armstrong</u>,, 517 U.S. 456, 464 (1996); <u>United States v. Wright</u>, 261 F. App'x 736, 736-37 (5th Cir. 2008). As this court noted in denying defendant's previous motion to compel production of the Horn Report, Record Doc. No. 33 at pp. 6-7, the Supreme Court in <u>Armstrong</u> clearly held that a discovery request under Rule 16 in a criminal case <u>cannot</u> be used to pursue a selective prosecution defense. <u>Armstrong</u>, 517 U.S. at 463, 468. Thus, no discovery of these materials is permissible to support defendant's claim of selective prosecution based on race.

For the foregoing reasons, the OPR Report is not "material" to the defense as defined in the case law noted above and is not otherwise discoverable. Defendant's motion for its production is therefore denied.

(C)     Kefir

In this motion, defendant requests the court's authorization to issue to The Times-Picayune the same kind of subpoena seeking information identifying the online commenter "kefir" as the court previously authorized concerning the online commenters aircheck and jammer1954. Both The Times-Picayune and the government oppose the motion. Record Doc. Nos. 153, 154. As directed by the court in an effort to expedite determination of this motion procedurally, Record Doc. No. 141, The Times-Picayune and the government are deemed to have requested that the court quash the proposed subpoena under Fed. R. Crim. P. 17(c)(2).

Defendant's motion asserts that kefir may be Jan Mann or Sal Perricone. Defendant's suspicion as to Jan Mann is based upon the matching of a zip code and certain non-case related comments relating to the commenter's home neighborhood to the same Old Metairie area where Mann, defense counsel himself and numerous other lawyers reside, and a single disparaging comment made by kefir about Stacey Jackson that is written in the style of a lawyer's memorandum. For these same reasons, during a telephone conference with all counsel in which the court unsuccessfully attempted to resolve this disputed subpoena request without further litigation, Record Doc. Nos. 141, 142, defense counsel orally suggested that the subpoena might also be issued to determine if kefir is former Assistant United States Attorney Jim Mann, Jan Mann's husband. Defendant suggests that Perricone may be this commenter because of the use of the pseudonym

"kefir," the name of a "super food . . . milk drink from the Caucasus Mountains recognized for its many health and beauty benefits," which is hawked on the internet by a dermatologist named Dr. Nicholas Perricone," Record Doc. No. 140-3 and 140-4 at pp. 1-2, whose relationship, if any, to the former Senior Litigation Counsel is unstated in the motion papers. Defendant has submitted to the court and all counsel the various Nola.com postings of kefir referred to in her motion papers, which are being separately filed in the record.

In determining this motion, the court applies the same legal standard, gleaned principally from the decision of the United States Supreme Court in United States v. Nixon, 418 U.S. 683 (1974), as applied to the previous subpoena concerning aircheck and jammer1954. Record Doc. No. 47 at pp. 3-4; Record Doc. No. 71 at pp. 4-5. To reiterate, in Nixon, the Supreme Court established "certain fundamental characteristics of the subpoena duces tecum in criminal cases" and a "required showing" and "test" by which its proper use must be evaluated. Id. at 698-99. The Supreme Court stated that the subpoena Rule applicable in criminal cases, Fed. R. Crim. P. 17,

> was not intended to provide a means of discovery . . . . [I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevent [sic]; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

Id. at 699.  Thus, "to carry his burden, [the party issuing the subpoena] must clear three hurdles:  (1) relevancy; (2) admissibility; (3) specificity."  Id. at 700.  The Nixon test presents a trial court with the sometimes difficult task of discerning the demarcation line at which a subpoena crosses impermissibly from "a sufficient likelihood," id. at 700, that the subpoenaed items are relevant and admissible as to the defense, to a prohibited fishing expedition.

    In this instance, informed by both its recent experience with the subpoenas concerning jammer1954 and aircheck and the findings and conclusions contained in the recently received OPR Report, the court finds that the requested subpoena concerning kefir crosses the boundary of what is permissibly subpoenaed under Rule 17 and that this subpoena cannot be authorized for the following reasons.

    Unlike the jammer1954 and aircheck comments, the kefir postings are not sufficiently similar to the comments known to be attributable to Mann and Perricone in tone, word choice, frequency, style or content.  The jammer1954 and aircheck comments about Stacey Jackson and/or NOAH were repeated and frequent, while kefir made a single such comment.  In contrast to the kefir comments as a whole, the tone of the Perricone, Mann, jammer1954 and aircheck comments is generally bitter, hypercritical and negative.  Unlike the kefir comments, the Mann, Perricone, jammer1954 and aircheck comments make frequent reference to common kinds of information and topics, such as reading indictments, federal law enforcement, the United States Attorney's Office, Jim Letten and

court or law enforcement occurrences and functions. None of the comments attributed to Mann or Perricone attached as exhibits to the OPR Report is written in the legal memorandum style used once by kefir. None of kefir's comments submitted by defendant in support of this motion display the "obscure . . . typographical tic" noted in the OPR Report concerning Mann's postings.[6] Finally, the OPR Report, which was not available to the court when the prior subpoena was authorized, is more definitive than the Horn Report in its determination that no employees of the United States Attorney, other than Jan Mann and Perricone, were involved in prosecutorial misconduct.

    Defense counsel's oral suggestion that the subpoena should issue in part to determine whether kefir was <u>Jim</u> Mann is pure speculation that does not rise to the level of the necessary showing or "a sufficient likelihood" that the subpoenaed materials would identify him, as required by <u>Nixon</u>, 418 U.S. at 698, 700. The question whether <u>Jim</u> Mann engaged in or contemporaneously knew about the commenting activities of his wife or Perricone has now been the subject of two Justice Department investigations, this court's in camera evaluation in this case, and the privately supported, expert-aided efforts of a former subject of federal investigation in connection with his civil defamation lawsuit. None of these has resulted in any evidence implicating <u>Jim</u> Mann in such activity.

---

[6] OPR Report at p. 126 n.374.

Under these circumstances, the subpoena requested by defendant in connection with the Nola.com commenter kefir is not permissible under the <u>Nixon</u> standard. Accordingly, defendant's "Ex Parte Second Motion for Issuance of Subpoena Duces Tecum . . ." is denied.

New Orleans, Louisiana, this \_\_\_\_\_20th\_\_\_\_ day of May, 2014.

_____
MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE