## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO:  13-131** |
| **STACEY JACKSON** | **SECTION: "S" (2)** |

### ORDER AND REASONS

   **IT IS HEREBY ORDERED** that Stacey Jackson's Motion to Dismiss based on Prosecutorial Misconduct (Doc. #110) is **DENIED**.

### BACKGROUND

   This matter is before the court on a motion to dismiss based on prosecutorial misconduct filed by defendant, Stacey Jackson. Specifically, Jackson, contends that the indictment should be dismissed because anonymous comments made by Salvador Perricone, the former Assistant United States Attorney Senior Litigation Counsel in the United States Attorney's Office for the Eastern District of Louisiana, in response to articles on the Times-Picayune's online forum Nola.com violated grand jury secrecy requirements, amounted to prosecutorial misconduct, and prove selective prosecution based on race.

   On June 6, 2013, the Grand Jury in the United States District Court for the Eastern District of Louisiana returned a four-count indictment against Jackson. Count 1 of the indictment charges that from January 2005 through August 2008, Jackson, Trellis Smith, Earl Myers and others conspired to commit bribery in violation of 18 U.S.C. § 666(a)(1)(B) and theft of public money in violation of 18 U.S.C. § 641; all in violation of 18 U.S.C. § 371. Count 1 outlines a scheme in which Jackson, the former executive director of the New Orleans Affordable Homeownership agency ("NOAH"), would overpay Smith and Myers for work that they performed under contracts with NOAH, and then she would receive a portion of the overpayment from Smith and Myers as a

"kickback" in exchange for continuing to give them work as NOAH contractors.  Counts 2 and 3

charge Jackson with a specific act of bribery in violation of § 666(a)(1)(B) and stealing public

money in violation of 18 U.S.C. § 641, respectively, in connection with her former employment at

NOAH.  Count 4 charges her with obstructing justice by providing false documentation to a federal

Grand Jury in violation of 18 U.S.C. § 1503(a).

     On August 8, 2008, almost five years prior to the filing of the indictment, the Times-

Picayune published an article on Nola.com titled "N.O. Council Members Get Subpoenas for NOAH

Records."  The first paragraph of the article states that the New Orleans City Council's attorney

reported that three members of the City Council received federal Grand Jury subpoenas seeking

documents related to NOAH, and he expected the other four members would also be served.  On

August 9, 2008, Perricone, under the moniker "campstblue" posted the following comment in

response to that article:

> well, man - you know, man.  I didn't know anything about dis stuff,
> man, you hear what I'm saying, man.  You know, man, like you
> always looking for something negative to write about, man.  How's
> dis going to help the racovery, man, you hear what I'm saying, man.
> We just trying to make it back, man.  Didn't you hear what I said
> man, dis is a choclate city, man and we do things the choclate way,
> man – you hear what I'm saying, man?
>
> TRANSLATION: It's our turn to steal.  We got the power.  You can't
> do anything to us.
>
> God Bless the US Attorneys office!!!!!!!!!

From August 2008, until the indictment was filed on June 6, 2013, the Times-Picayune

published many articles about Jackson and NOAH on Nola.com, and hundreds of comments were

posted by anonymous bloggers in response.  The above-referenced comment by "campstblue" is the

only one about Jackson known to have been posted by an Assistant United States Attorney, or other government law enforcement official.[1]  Jackson argues that the "campstblue" comment, along with others anonymously posted by Perricone under various monikers in response to articles about political corruption in and around New Orleans, prove that the case against her should be dismissed for grand jury leaks, prosecutorial misconduct and selective prosecution based on race.  Jackson points to the following specific comments anonymously made by Perricone.

On May 23, 2009, under the moniker "legacyusa," Perricone posted:

> Harvey, I agree with Campst [one of Perricone's own blog names], you are an idiot!!!!
>
> Remember right after Katrina when Eddie Jordan was MIA who stepped in and functioned as the DA's office. THE UNITED STATES ATTORNEY'S OFFICE.  Letten and his crew went after street hoods aggressively and to this day, still do.  Blacks have done more damage to their own people than whites have could ever imagine.  But, yet blacks won't blame their own for their own problems – it's easier to blame the white man.

---

[1]  Jackson filed an ex parte motion for issuance of a subpoena duces tecum to the Times-Picayune and production prior to trial pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure seeking information that would identify two of the bloggers that posted comments in response to articles about her or NOAH, "aircheck" and "jammer1954." (Doc. #39).  The Times-Picayune objected, and this court ordered that the requested information be produced to the court for an in camera inspection.  (Docs. #47 & 71).  After the in camera inspection, the court determined that "jammer1954" "was not an agent or employee of the United States Attorney's Office or any of the five governmental agencies involved in the investigation, grand jury proceedings or prosecution of this case," and declined to reveal the identifying information. (Doc. #129). The information produced by the Times-Picayune regarding "aircheck" did not lead to the identification of an individual. (Doc. #156).  Because "aircheck" "cannot be identified as a prosecutor or government agent connected to the investigation or prosecution of defendant," the court declined to release the information. Id.

Jackson also filed an ex parte motion for issuance of a subpoena duces tecum to the Times-Picayune seeking information that would identify "kefir," another blogger that posted a comment in response to an article about her. (Doc. #140) The court denied the motion, finding that the "kefir" comment did not have sufficient similarities to those known to have been made by a prosecutor, "aircheck" or "jammer1954" and an investigation conducted by the United States Department of Justice's Office of Professional Responsibility ("OPR report") found that "no employees of the United States Attorney, other than Jan Mann, the former First Assistant United States Attorney, and Perricone, were involved in prosecutorial misconduct." (Doc. #156).

Blacks kill blacks with greater frequency than whites kill whites or whites kill blacks. But still the white man gets the blame.

Blacks steal from blacks more.

Blacks sell drugs to blacks more.

Blacks deny blacks a good education. The Orleans School board is a great example of how black adults victimize their own children. Now whites are stepping in to see that young blacks get educated.

Blacks have run this city for over 30 years. Enough said.

On November 28, 2009, Perricone, using the name "legacyusa," commented:

I hope you don't think DeFillo is one of those honest officers ....that entire 5th floor needs to go. Hope the next mayor cleans house on the day he or she is sworn in. I wonder if New Orleans will ever recover from the Nagin Administration. Boy were we fooled.

On February 17, 2010, Perricone, as "legacyusa," commented:

His entire 8 years has been one corrupt morass. Either by neglect or active pursuit of personal financial growth, Nagin's administration has been an abortion. Police corruption, garbage contracts, computer and crime camera's – where's the growth? Oh, I forgot – 800K to Zulu. Now thats progress, isn't it. His statement several years ago about New Orleans being a Chocolate city is the epitome of corruption – corrupt in the sense that he purposefully announced, to satiate a few partisans, that whites are not welcomed in New Orleans and that he would do everything to present the turning back of the clock. There are various forms of corruption and Nagin has made Marc Morial look eligible for Sainthood. He can't leave soon enough.

On March 26, 2010, Perricone, posting as "legacyusa," commented:

He stepped down before he stepped up. I am now beginning to believe that the Nagin administration has exceeded the Marc Morial administration in denying the citizens of New Orleans of their right to honest government, for profit. How much more are we going to tolerate this?.... It's time to break the cycle or admit that we are deliberately and happily ignorant.

4

Also on March 26, 2010, Perricone, using the name "legacyusa," posted:

> Nagin vetoes a anti-corruption ordinance!!!! That should be his
> legacy.  Nothing more– nothing less.

On July 25, 2011, under the moniker "dramatis personae," Perricone commented on the

testimony of the former New Orleans Police Superintendent in a federal criminal civil rights case:

> He can't remember which deputy chief he instructed to conduct
> investigations of police shootings ? ? ? ? Thank God he's not chief
> anymore.  Looks like he's reached his capacity for competence at
> Southern [University].

On January 18, 2012, Perricone, as "Henry L. Mencken1951," posted in response to an

article about Aaron Broussard, the former Jefferson Parish President who hired Robert Jenkins, an

African American attorney, to defend him in a federal corruption prosecution:

> What is the former president of white suburbia doing with a black
> Tulane and Broad lawyer? Now there's a story that should be
> explored.

Jackson argues that these comments "show a pattern of governmental conduct, system and

intent to violate the law" and are "racial attacks" that incite the community and influence potential

jurors against African American defendants, or white defendants with African American attorneys.

Further, she argues that as "an African American female who served from 1998 to June 27, 2008,

as Executive Director of NOAH, a city agency, in which former Mayor Ray Nagin owned the stock

– ", "[s]he is the object and victim of these blogs and racial attacks."  Jackson argues that the only

remedy is dismissal of the indictment because she cannot get a fair trial.  She states that the above-

quoted blogs are the basis for this motion to dismiss based on prosecutorial misconduct, grand jury

leaks, and the following constitutional violations:

> (i)     claims of Government violation of grand jury secrecy rules,
>         Rule 6(e)(ii), Federal Rules of Criminal Procedure;

5

(ii)     prosecutorial misconduct and unethical conduct;

(iii)    violations of federal regulations;

(iv)     creating a media carnival atmosphere and public pressure on others being investigated, as a tool to rein in other subjects of the grand jury;

(v)      racial targeting and profiling;

(vi)     attempting unlawfully to influence public opinion, and potential and actual jurors;

(vii)    unlawful Government public expression of personal opinions about Ms. Jackson's guilt, and publicly stating, in effect, that she must have committed the crimes being investigated, because of the color of her skin, and that she and other African Americans routinely commit crimes and have the right to do so, because of the color of their skins;

(viii)   making comments to appeal to the conscience of the community to convict African Americans, including Ms. Jackson, who he says has been committing crimes with impunity; and, otherwise convict [] Ms. Jackson for reasons other than the evidence presented at a fair trial with due process of law, which she can no longer have due to these Government misdeeds.

In a prior Order and Reasons (Doc. #33) in this case, the United States Magistrate Judge synthesized Jackson's "eight defenses" into "four (4) possible legal defenses, three of which might support a motion to dismiss the indictment:" (1) violations of the grand jury secrecy requirements of Rule 6(e) of the Federal Rules of Criminal Procedure; (2) prosecutorial misconduct undermining due process fairness principles in the accusatory process through violation of federal regulations and ethical rules applicable to prosecutors; (3) selective prosecution based upon defendant's race; and, (4) a broader argument of violation of defendant's due process rights by combination of all of the above.  Thus, this court will analyze these arguments in evaluating Jackson's motion to dismiss.

6

## ANALYSIS

**1.    Violations of the grand jury secrecy requirements**

Rule 6(e)(2)(B)(vi) of the Federal Rules of Criminal Procedure provides that a government attorney must not disclose matters occurring before a grand jury, unless certain exceptions apply.[2] Jackson argues that Perricone's anonymous online comments violated the grand jury secrecy rule.

As stated above, the only comment attributable to Perricone posted under an article about Jackson on Nola.com was made on August 8, 2008, in response to the article "N.O. Council Members Get Subpoenas for NOAH Records." This comment does not reveal any Grand Jury information. Further, the article specifically states in the first paragraph that the New Orleans City Council's attorney, not the United States Attorney's Office, reported that three members of the City Council received federal Grand Jury subpoenas seeking documents related to NOAH, and he expected the other four members would also be served. In addition, "the OPR report cites no evidence that might support either a conclusion or defendant's argument that any grand jury leak or other violation of Fed. R. Crim. P 6(e) occurred or is evident in Nola.com postings attributable to Perricone or [Jan] Mann." (Doc. #156). Therefore, Jackson's motion to dismiss the indictment for violations of grand jury secrecy is DENIED.

**2.    Prosecutorial misconduct undermining due process fairness principles in the accusatory process through violation of federal regulations and ethical rules applicable to prosecutors**

Jackson argues that Perricone's anonymous comments about her in particular, and the Nagin administration and African American city officials in general, improperly prejudiced the Grand Jury against her. She argues that her right to due process guaranteed by the Fifth Amendment of the

---

[2] The exceptions found in section 3 are not applicable to this case. See FED. R. CRIM. P. 6(e)(3).

Constitution of the Untied States was violated by the impact on the Grand Jury proceedings which the postings created.

"[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant[]." Bank of Nova Scotia v. United States, 108 S.Ct. 2369, 2373 (1988).  However, an indictment may be dismissed "for prosecutorial misconduct which is flagrant to the point that there is some significant infringement on the grand jury's ability to exercise independent judgment." United States v. Pino, 708 F.2d 523, 530 (10th Cir. 1983).  To establish the defense of prosecutorial misconduct, the defendant must show that: (1) the prosecutor engaged in improper conduct; and, (2) the prosecutor's improper conduct affected the defendant's substantial right.  United States v. Winters, 530 Fed. Appx. 390, 399 (5th Cir. 2013). In United States v. McKenzie, 678 F.2d 629, 631 (5th Cir. 1982), the United States Court of Appeals for the Fifth Circuit explained that even upon a showing of the "most egregious prosecutorial misconduct," the indictment may only be dismissed upon proof of actual prejudice, "when prosecutorial misconduct amounts to overbearing the will of the grand jury so that the indictment is, in effect, that of the prosecutor rather than the grand jury." "But even with this standard, a 'common theme of the cases is that prosecutorial misconduct alone [or at least rarely] is not a valid reason to dismiss an indictment.'" United States v. Hillman, 642 F.3d 929, 934 (10th Cir. 2011) (quoting United States v. Kilpatrick, 821 F.2d 1456, 1465 (10th Cir. 1987), aff'd sub nom., Bank of Nova Scotia v. United States, 108 S.Ct. 2369 (1988)).

It is undisputed that Perricone engaged in improper conduct by blogging about ongoing cases and investigations in which the United States Attorney's Office for the Eastern District of Louisiana was involved.  However, Jackson has not established that this conduct affected her substantial rights

8

by "overbearing the will of the grand jury so that the indictment is, in effect, that of the prosecutor rather than the grand jury." See McKenzie, 678 F.2d at 631. Jackson has pointed to one comment written by Perricone in response to an article about her. This comment, while racially charged, did not mention her by name, nor was it substantially different from many of the other comments posted in response to this article.[3] Perricone's comment was written almost five years before the indictment against Jackson was returned. In that time, six Grand Juries were convened and investigated Jackson

---

[3] For example, "69stanger" posted:

> Only a complete fool would ponder stealing a dime of taxpayer money with the FEDs all over this craphole, but then, these "public servant" asses continue to believe that they and theirs are above the law.

> Shameless, selfish, disgusting greed.

> They WILL pay...oh glory days, they will pay.

> "Absolute Power Corrupts Absolutely"

Also, "stormyd" posted:

> CONFIRMED! Nagin was subpoena's too!

> Too early to crack the champagne. But if anyone can give us a victory and get that buffoon out of office, Letten can!

> Go FEDS!

And "minneaux" posted:

> Did Tony Faciane get a subpoena? He should. Was not he responsible for overseeing NOAH?

> How is the Hedge-Morrell home coming along?

> I can't wait to see how Nagin's MO comes off with the FEDS. They should appreciate it, after all, it keeps the Brand Alive. We'll be watching Mayor Wonka. Even with your poor acting skills, this is the best soap opera ever!

http://www.nola.com/news/index.ssf/2008/08/no_council_members_get_subpoen.html (last accessed May 22, 2014).

and NOAH. It was the sixth Grand Jury that returned the indictment against Jackson. The United States Attorney's Office has represented to this court that Perricone was not involved in the investigation of this case or its presentation of this case to any of the Grand Juries involved, and did not directly supervise any of the work of the Assistant United States Attorneys who were assigned to this case. Moreover, Perricone resigned his position at the United States Attorney's Office for the Eastern District of Louisiana more than one year before the indictment against Jackson was returned. It is impossible to say that the will of the Grand Jury was overborne by Perricone's one comment about Jackson, that did not mention her by name and was anonymously posted almost five years before the indictment was returned by a Grand Jury that was not yet impaneled at the time Perricone made the comment. Even when coupled with Perricone's other comments cited by Jackson, it is illogical to conclude that the will of all of the members of all of the six Grand Juries involved in the investigation and indictment of this case was so overborne by Perricone's comments, which were not known to have been made by an Assistant United States Attorney at the time the investigation was underway and the indictment returned, that the indictment was the will of the prosecutor rather than the Grand Jury.[4]

Jackson, relying on United States v. Bowen, 969 F.Supp.2d 546 (E.D. La. 2013) (Engelhardt, J.), argues that she need not demonstrate actual prejudice to obtain a dismissal of the indictment due to prosecutorial misconduct because Perricone's and Jan Mann's frequent anonymous comments on Nola.com about pending cases demonstrate a pattern, policy or practice of the office of the former

---

[4] Jackson argued at oral argument that the Grand Jury that returned the indictment against her must have improperly relied on information presented to the previous Grand Juries because it heard only fifty pages of testimony before returning the indictment. Jackson's argument is without merit because there is no fundamental unfairness that would warrant dismissal of the indictment where the grand jury is presented with read-back testimony of an investigating agent rather than direct testimony from the witnesses themselves. United States v. Waldon, 363 F.3d 1103, 1109 (11th Cir. 2004).

United States Attorney for the Eastern District of Louisiana of engaging in an anonymous media campaign to prejudice potential grand jurors against targets of investigations.

In <u>Bowen</u>, the court was faced with a motion for a new trial in which the defendants, who were former members of the New Orleans Police Department that had been convicted of civil rights violations and other charges in connection with the shooting of civilians and a subsequent coverup in the aftermath of Hurricane Katrina, argued that anonymous online comments made by officials in the United States Department of Justice constituted prosecutorial misconduct sufficient to overturn their convictions. <u>Bowen</u>, 969 F.Supp.2d at 549-52.  After examining the extensive nature of the anonymous online comments made by Perricone and other Justice Department officials during the trial of that matter, the Justice Department's investigation of the blogging incident, Jan Mann's efforts to hide her own anonymous commenting activity on Nola.com, and the ethical obligations imposed on prosecutors, the court found that the defendants did not need to show actual prejudice to obtain relief.  <u>Id.</u> at 552-75. In so doing, the court relied on a footnote in <u>Brecht v. Abrahamson</u>, 113 S.Ct. 1710, 1722 n. 9 (1993), which states:

> Our holding does not foreclose the possibility that in an unusual case, a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict.

<u>Id.</u> at 575 (quoting <u>Brecht</u>, 113 S.Ct. at 1722 n. 9).  The court in <u>Bowen</u> found that:

> One need only review the facts set forth herein, and in the Court's November 26, 2012 Order and Reasons (Rec. Doc. 1070), to discern that this is a most unusual case, involving "error" (or, more alarmingly, intentional conduct) that surely consists of a "deliberate and especially egregious" pattern of prosecutorial misconduct.

<u>Id.</u>

11

Jackson argues that this court should follow Bowen and apply the footnote 9 of Brecht to find that she does not need to show actual prejudice or that "the inflammatory racial blogs [were] conveyed to the grand jur[ies] . . . that investigated [her]."  She argues the court should consider the "cumulative impact of Mr. Perricone's blogging," and that if the blogs that affected Bowen, which did not mention race, were "deliberate and especially egregious and a pattern of prosecutorial misconduct," surely Mr. Perricone's blogs about Ms. Jackson, the black community, the Nagin administration in which she worked, and the other racially charged statements, are even more so."

Bowen's and Brecht's holdings do not relieve Jackson of the obligation to show actual prejudice to prevail on her prosecutorial misconduct motion.  In Brecht, the question before the Supreme Court of the United States was the standard applicable on collateral review of an alleged Doyle violation.[5] Brecht, 113 S.Ct. at 1716. The Court held that "the *Kotteakos* harmless-error standard applies in determining whether habeas relief must be granted because of constitutional error of the trial type," meaning that a habeas petitioner is "not entitled to habeas relief based on trial error unless [he] can establish that it resulted in 'actual prejudice.'" Id. at 1722.  The Court qualified the holding with footnote 9, quoted above, which states that "a deliberate and especially egregious error of *the trial type*, or one that is combined with a pattern of prosecutorial misconduct" might justify relief without a showing of actual prejudice if the "integrity of the proceeding" was infected. Id. at 1722 n. 9 (emphasis added).

In Bowen, the court found that there was a pattern of prosecutorial misconduct that occurred during the trial of that matter, and went to great lengths to describe the blogging done by Justice

---

[5]  In Doyle v. Ohio, 96 S.Ct. 2240, 2245 (1976), the Supreme Court of the United States held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment."

Department officials during the trial.  The court noted that it was especially disturbed by blogs done by Karla Dobinski, a Justice Department attorney involved in that case, during the trial in which she encouraged the "public service" of "specific posters thirsting for convictions."   Bowen, 969 F.Supp.2d at 624.

The online commenting cited by defendant in support of this motion concerning this defendant and the underlying investigation in this case does not approach the same high level of prosecutorial misconduct described in Bowen.  Jackson has not yet been tried.  Therefore, there can be no "error of the trial type."  Further, there is only one comment regarding Jackson specifically attributable to a Justice Department official, namely Perricone, posted in response to an article about her, and that comment was made almost five years before the indictment was returned.  Perricone was no longer employed at the United States Attorney's Office for the Eastern District of Louisiana when the Grand Jury returned the indictment against Jackson, and he was not involved in her case.  Moreover, this court is not aware of any pattern, practice or procedure of prosecutorial misconduct in Jackson's case.  As stated in this Court's Order and Reasons of May 2014, regarding Jackson's discovery requests:

> The overall conclusion of the OPR Report is that prosecutorial misconduct of the kind committed by Perricone and Mann was confined to them and was neither sanctioned by the United States Attorney nor engaged in by others in the office.  In summary, the OPR Report concludes that "[t]he evidence is insufficient to establish by a preponderance of the evidence that" the former United States Attorney or anyone else in his office "was aware contemporaneously" of the misconduct of Mann and Perricone, or even that Mann and Perricone were "aware contemporaneously" of each other's posting activities. The OPR Report also concludes that there is "no evidence establishing" that anyone in the United States Attorney's Office, apart from Mann and Perricone, engaged in misconduct of any kind. It concludes that while others in the office may have suspected that Perricone was posting, none actually knew that he was, and none

"knew or suspected that Mann was posting comments online about" office matters. While the report recognizes circumstances giving rise to a "reasonable suspicion" of either coordination or knowledge by Mann and Perricone of each other's posting activities, it does not support a conclusion that a pattern, policy or practice to influence public opinion about the guilt of defendants or targets of investigations existed in the office of the former United States Attorney as a whole of the kind that might be material to Stacey Jackson's defense. The OPR Report concludes: "Without access to information protected by [N]ola.com, OPR cannot state with absolute certainty that no USAO employee other than Perricone and Mann made online extrajudicial statements about active Department [of Justice] investigations or pending cases. Nonetheless, neither OPR nor [the Horn Report], using available investigative techniques and resources, found evidence establishing that other USAO employees made extrajudicial statements about Department investigations or pending cases through online postings."

(Doc. #156).

In the absence of any other evidence, Perricone's postings alone are insufficient to establish that the Untied States Attorney's Office for the Eastern of Louisiana had a pattern, policy or practice of using online comments to bias the Grand Jurors.  The postings were made anonymously and only one comment attributable to either prosecutor was posted to an article about Jackson or NOAH. Jackson's argument amounts to one that pretrial publicity, including the comments posted on Nola.com, biased the Grand Jury.  "Publicity is generally not a basis for dismissal of an indictment." Waldon, 363 F.3d at 1109 (citing United States v. Washington, 705 F.2d 489, 499 (D.C. Cir. 1983); In re Grand Jury, 508 F.Supp. 1210, 1213 (S.D. Ala. 1980) ("(i)t does not appear that any indictment has thus far been dismissed on th(e) ground" that it was "induced by pretrial publicity") (citing 8 Moore's Federal Practice P. 6.03(4), at 6-61 (2d ed. 1979)).  To successfully challenge an indictment based on publicity, "a defendant must show that such pretrial publicity caused actual prejudice and that the indictment returned was the result of that prejudice." United States v. Lewis, 738 F.2d 916,

922 (8th Cir. 1984) (citing <u>United States v. Civella</u>, 648 F.2d 1167, 1173 (8th Cir. 1981);

<u>McWilliams v. United States</u>, 394 F.2d 41, 44 (8th Cir. 1968)).  Dismissal of an indictment based

on bias of the grand jury caused by publicity "is an extreme remedy," and the defendant's burden "is

a heavy one:"

> The cases which have considered the question of preindictment
> publicity and its effect on the grand jury, rather than holding that
> preindictment publicity is inherently prejudicial and cause for
> dismissal of the indictment, have held that the defendant must show
> specifically that such publicity caused prejudice and bias in the grand
> jurors and that the indictment returned was the result of essential
> unfairness.

<u>Civella</u>, 648 F.2d at 1173 (quoting <u>United States v. Anzelmo</u>, 319 F.Supp. 1106, 1113 (E.D. La.

1970)).

These principles apply even if the government engendered the pretrial publicity. <u>Id.</u>  In

<u>Civella</u>, government officials gave interviews to the press, which resulted in a five-part article series

in the local newspaper. <u>Id.</u>  Additionally, the FBI issued press releases. <u>Id.</u>  Defendant alleged that

the releases of information were "orchestrated" with the intent to "create in the public mind a

favorable image of the forces of prosecution and highly prejudicial image of the Defendants under

investigation," and amounted to a denial of due process and a violation of Department of Justice

Regulation 28 C.F.R. § 50.2, relating to the release of certain types of prejudicial information. <u>Id.</u>

The court rejected this argument finding that "[i]t is the prejudicial effect of pre-indictment

publicity, rather than its source, which is the significant consideration in determining whether an

indictment should be dismissed." <u>Id.</u> at 1174.

Therefore, actual prejudice must be shown both for dismissal of the indictment for

prosecutorial misconduct and for dismissal based on pretrial publicity. Jackson has not shown actual

prejudice. Even if the court were to assume that other anonymous comments posted in response to articles about Jackson and NOAH on Nola.com were made by persons in the United States Attorney's Office's, there is no indication that any of the comments biased the six Grand Juries involved in the investigation, or particularly the one that actually returned the indictment in this case. Thus, Jackson's motion to dismiss for prosecutorial misconduct is DENIED.

**3.    Selective prosecution based upon defendant's race**

Jackson argues that Perricone's blogs are racist and prove that she was indicted because of her race. She contends that the blogs demonstrate that the office of the former Untied States Attorney for the Eastern District of Louisiana had prejudice against and a policy of prosecuting African American government officials.

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." United States v. Armstrong, 116 S.Ct. 1480, 1486 (1996). Under the equal protection requirements of the Due Process Clause of the Fifth Amendment of the Constitution of the United States, "the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." Id. (quotations and citations omitted). A defendant's prima facie case of selective prosecution, must show: (1) that she was "singled out for prosecution while others similarly situated who committed the same crime were not prosecuted;" and, (2) "that the government's discriminatory selection of [defendant] for prosecution was invidious or done in bad faith – i.e., that the government selected its course of prosecution 'because of' rather than 'in spite of' its adverse effect upon an identifiable group." United States v. Sparks, 2 F.3d 574, 580 (5th Cir. 1993) (quoting Wayte v. United States, 105 S.Ct. 1524, 1532 (1985)). The defendant bears a

heavy burden to demonstrate by clear and convincing evidence that the prosecutor violated her right to equal protection. <u>Armstrong</u>, 116 S.Ct. at 1486.

Jackson has not stated a prima facie case of selective prosecution based on race because she has not shown that she was singled out for prosecution while others similarly situated, but of a different race, who committed the same crime were not prosecuted.   To the contrary, there is evidence the United States Attorney's Office for the Eastern District of Louisiana has prosecuted public corruption regardless of the defendant's race.  For example, Aaron Broussard, a white man who was formerly the Jefferson Parish President, and his ex-wife, Karen Parker, who is also white, were indicted for violating 18 U.S.C. §§ 371 and 666(a)(1)(B) (Broussard) or 666(a)(1)(A) (Parker).[6] <u>United States v. Broussard, et al.</u>, Criminal Action No. 11-229, Doc. #1 (E.D. La. 12/2/2011).  Mark St. Pierre and Gregory Meffert, both of whom are white men involved with the government of the City of New Orleans, were indicted for violations of 18 U.S.C. §§ 371 and 18 U.S.C. 666(a)(1)(B) (Meffert) or 666(a)(2) (St. Pierre).[7] <u>United States v. Meffert, et al.</u>, Criminal Action No. 09-374, Doc. #1 (E.D. La. 11/6/2009).  Because Jackson has not established the first element of a prima facie

---

[6]  Broussard pleaded guilty to one count of violating 18 U.S.C. § 371 and one count of violating 18 U.S.C. § 666(a)(1)(A). <u>United States v. Broussard, et al.</u>, Criminal Action No. 11-229, Doc. #237 (E.D. La. 12/2/2011). He was sentenced to serve 46 months in the custody of the United Bureau of Prisons as to each count, to be served concurrently with each other. <u>Id.</u>  Parker pleaded guilty to a Superseding Bill of Information that charged her with misprison of a felony in violation of 18 U.S.C. § 4. <u>Id.</u> at Doc. #238. She was sentenced to 3 years of probation. <u>Id.</u>

[7] Meffert pleaded guilty to one count of violating 18 U.S.C. § 371, and one count of filing a false or fraudulent tax return in violation of 26 U.S.C. § 72061. <u>United States v. Meffert, et al.</u>, Criminal Action No. 09-374, Doc. #244 (E.D. La. 11/6/2009).  Meffert's sentencing is set for September 4, 2014. <u>Id.</u> at Doc. #514. St. Pierre was tried and convicted of counts one through fifty-three of the Third Superseding Indictment, which included one count of violating 18 U.S.C. § 371, and three counts of violating 18 U.S.C. § 666(a)(2). <u>Id.</u> at Doc. #392.  He was sentenced to serve a total two-hundred-and-ten months in the custody of the United States Bureau of Prisons. <u>Id.</u>

case for selective prosecution based on race, it is unnecessary to discuss the second element, and her motion to dismiss the indictment based on selective prosecution is DENIED.

**D.   A broader argument of violation of defendant's due process rights by combination of all of the above**

Because there is no evidence that the former Assistant United States Attorneys' online comments violated grand jury secrecy requirements, amounted to prosecutorial misconduct that overbore the will of the Grand Jury or caused selective prosecution based on race, the court cannot find that a combination of these three items resulted in a violation of defendant's due process rights. Waldon, 363 F.3d at 1110 ("In sum, because no individual errors underlying the district court's failure to dismiss the indictment have been demonstrated, no cumulative errors can exist."); United States v. Allen, 269 F.3d 842, 847 (7th Cir. 2001) ("If there are no errors or a single error, there can be no cumulative error.").   Therefore, Jackson's motion to dismiss the indictment based on a combination of violations is DENIED.

**CONCLUSION**

**IT IS HEREBY ORDERED** that Stacey Jackson's Motion to Dismiss based on Prosecutorial Misconduct (Doc. #110) is **DENIED**.

New Orleans, Louisiana, this  23rd  day of May, 2014.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

18
